In re COMMERCIAL OIL SERVICE, INC., Debtor.

STATE OF OHIO, ex rel. Anthony J. CELEBREZZE, Jr. Attorney General of Ohio, Plaintiffs,

v.

COMMERCIAL OIL SERVICE, INC., et al., Defendants.

Bankruptcy No. 85–01951.
Adv. No. 86–0015.

United States Bankruptcy Court, N.D. Ohio, W.D.

Feb. 21, 1986.

Thomas J. Schank, Toledo, Ohio, for debtor.

David Schiff, Martha E. Horvitz, Columbus, Ohio, for plaintiffs State of Ohio, ex rel. Anthony J. Celebrezze, Jr., Attorney General of Ohio.

Philip R. Joelson, Toledo, Ohio, Trustee.

Verne Armstrong, Asst. U.S. Atty., Toledo, Ohio, for U.S.A.

## OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard upon the motion of the Trustee, Philip R. Joelson, to dismiss the voluntary Chapter 7 petition of the Debtor, Commercial Oil Service, Inc. or to suspend all proceedings in this case, and also upon the motion of the State of Ohio to remand its action against the Debtor to enforce the State's environmental protection laws which was removed by the Trustee to this court from the Court of Common Pleas, Lucas County, Ohio. The motions were consolidated since they stem from a common nucleus of facts, but shall be dealt with separately herein.

The State of Ohio seeks remand of the removed action and also supports the Trustee's motion to dismiss pursuant to 11 U.S.C. § 305 or 11 U.S.C. § 707(a). The Debtor objects to the dismissal of its Chapter 7 case. The court finds that it must abstain from hearing the removed action pursuant to 28 U.S.C. § 1334(c)(2) and that it should be remanded to the Court of Common Pleas, Lucas County, Ohio. The court finds further that the motion to dismiss the Debtor's Chapter 7 case is well taken and should be granted pursuant to 11 U.S.C. § 707(a).

### FACTS

Commercial Oil, Inc. operated a liquid waste storage and recycling facility in Oregon, Ohio. The Oregon facility processed, bought and sold waste oil and also operated trucks for transporting waste oil. Until 1982, Commercial Oil also operated a smaller liquid waste storage facility in Fremont, Ohio.

Tests made by State E.P.A. investigators at Commercial Oil's Oregon facility between 1983 and 1985 of materials stored in drums, tanks and a 4.25 million gallon lagoon system showed the presence of PCB's in excess of 50 parts per million and other toxic and hazardous materials. On July 1, 1985, the United States filed its complaint against Commercial Oil Service, Inc., under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2616.

On September 27, 1985 the State of Ohio ("State") filed suit in the Court of Common Pleas, Lucas County, Ohio, against Commercial Oil Service, Inc. and its principal officers to enforce the State's environmental protection laws. On that date the parties agreed to a temporary restraining order, which was later modified and extended on October 11, 1985. Under the stipulated temporary restraining order the Debtor and its officers agreed to stop further operation of the facility, that the assets of the Debtor be preserved for use in closing and cleaning up the facility and that hazardous waste would be removed from the site.

On October 16, 1985 the District Court entered a preliminary partial consent order agreed to by the parties. That order required that nothing should be added to or moved from or between the lagoons, water ponds, and two contaminated storage tanks; that any sale of oil be subject to certain conditions; that no more wastes be received at Commercial Oil's facilities; that a minimum of two feet of freeboard be maintained on PCB-contaminated lagoons and ponds to ensure no overflow of contaminated wastes during periods of rain and snow melt accumulation; that site security be maintained, including fence inspection and repair, and that the company make available to the United States on request records of all receipts and payments to and from the corporate account since November, 1984. The preliminary partial consent decree also required monthly compliance reports.

Commercial Oil Service, Inc. ("Commercial") filed its voluntary petition under Chapter 7 of the United States Bankruptcy Code on November 21, 1985. The court appointed Philip R. Joelson as Interim Trustee.

On December 17, 1985, the State amended its complaint filed in State court to add the Trustee as a defendant. The relief sought in the State court suit is the cleanup of the hazardous materials illegally stored and/or disposed of on Commercial's property, the abatement of past violations of the State's environmental laws and the prohibition of future such violations, and the payment of civil penalties for the violations of State law committed by Commercial and its principal officers.

The Interim Trustee filed two contradictory motions in this court. On the one hand, on January 10, 1986, the Trustee moved this court to abstain, dismiss or suspend the case. Then, on the other hand, the Trustee filed an application on January 15, 1986, to remove the State court action to this court pursuant to 28 U.S.C. § 1478(a).

### MOTION TO REMAND

The Trustee filed an application to remove a case from the Common Pleas Court of Lucas County, Ohio, entitled, *State of Ohio, ex rel. Anthony J. Celebrezze, Jr., Attorney General of Ohio, Plaintiff vs. Commercial Oil Service, Inc., et al., Defendants*, Case No. CI85–2722, to this court. The Trustee claims that this court has jurisdiction under the provisions of 28 U.S.C. § 1478(a) because the State court action attempts to deal with property of the Debtor/Defendant, Commercial Oil Service, Inc.

■ The State of Ohio argues that this court lacks jurisdiction because the Trustee filed his application for removal of the State court action pursuant to 28 U.S.C. § 1478(a) which has not been in effect since July 10, 1984. It is true that the applicable statute providing for removal of claims or causes of action related to Bankruptcy cases is 28 U.S.C. § 1452 which states in pertinent part:

**314**

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause' of action under section 1334 of this title.

However, the Trustee's use of the wrong section is not fatal because pursuant to 28 U.S.C. § 157(a) the District Court was empowered to make a general referral of all bankruptcy cases to the Bankruptcy Court. General Order No. 84 issued on July 18, 1984 made a general referral of "any and all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11" to the Bankruptcy Court. Accordingly, the Trustee was required to file the removal action with the Bankruptcy Court, which he did and thus this court has jurisdiction to hear the removal action.

The second issue raised by the State is that this action cannot be removed because its purpose is to enforce police or regulatory powers or, in the alternative, the case should be remanded. Without reaching the merits of the State's first argument concerning police or regulatory powers the court finds that it must abstain from hearing this case under § 1334(c)(2) and that remand of the case back to the Court of Common Pleas is the proper remedy.

The Trustee asserts that this court has jurisdiction under the provisions of 28 U.S.C. § 1478(a) (now § 1452) because the State court action attempts to deal with property of the Debtor. Contrary to the Trustee's position, the State argues that mandatory abstention is appropriate in this matter pursuant to 28 U.S.C. § 1334(c)(2) which provides in pertinent part as follows:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11,

with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

■ Section 1334(c)(2) mandates abstention in matters that would have been filed in State court rather than Federal court but for a bankruptcy filing. *State Bank of Lombard v. Chart House, Inc.,* 46 B.R. 468, 12 B.C.D. 1187 (Bankr.N.D.Ill.1985). *In re Dakota Grain Systems, Inc.,* 41 B.R. 749 (Bankr.D.N.D.1984). Under § 1334(c)(2), abstention is mandatory when three requirements have been met: (1) the case is based upon a state law claim or cause of action which, although related to a title 11 case, did not arise under Title 11 or out of a Title 11 case; (2) the case could not have been commenced in Federal Court absent the fact of a bankruptcy petition and, finally, (3) if the case were commenced in State court, it could be timely adjudicated. *Dakota, supra* at 750.

The State of Ohio's complaint in the Court of Common Pleas, which was filed prior to the defendants filing bankruptcy, relies solely on State environmental law. The State's claim neither arose under Title 11 nor arose in a case under Title 11. Furthermore, the Trustee's complaint fails to indicate any grounds for jurisdiction such as diversity or a federal question. Thus, it appears except for the fact that the Defendant is a Debtor in bankruptcy this case could not have been brought in the Bankruptcy Court.

■ The last requirement for mandatory abstention under § 1334(c)(2) is that the claim can be timely adjudicated in State

court. A trial date has been set for April 16, 1986 in the Court of Common Pleas, Lucas County, Ohio. There is no evidence before this court to suggest that the State court will be unable to quickly try the case. For all of the foregoing reasons, it is apparent that this is a State law cause of action that contains no ground for federal jurisdiction (other than it is related to a case under Chapter 11) and that it can be timely adjudicated in State court. Therefore the court must abstain from hearing this case pursuant to § 1334(c)(2).

## MOTION TO ABSTAIN, DISMISS OR SUSPEND

The Trustee made his motion to abstain, dismiss or suspend pursuant to § 305 of the Bankruptcy Code. (While titled Abstention § 305 only provides for dismissal or suspension.) The State of Ohio agrees with the Trustee that the case should be dismissed and cites § 707(a) as well as § 305. A memorandum in opposition to dismissal was filed by the Debtor. The court finds that § 305 is not appropriate but that § 707(a) is and that the case should be dismissed accordingly.

Section 305 provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

The State and Federal governments argue that as the two largest creditors dismissal will be in their best interests. One creditor present at the hearing expressed its objection to dismissal. However, creditors' interests are not the only ones the court is concerned with. In addition to the creditors' interests it is necessary to prove that dismissal under § 305 would also be in the best interests of the Debtor.

The language of § 305 is clear and its application is narrow. The court in *In re G-N Partners*, 48 B.R. 459, 461 (Bankr.D. Minn.1985) noted "[w]hile § 305 is not limited to involuntary cases, it certainly will

have limited applicability ... to voluntary cases." The court in *In re Pine Lake Village Apartment Company*, 16 B.R. 750, 753 (Bankr.S.D.N.Y.1982) stated, "it defies credulity to say that the Debtor's interest would be better served by a dismisal when the Debtor voluntarily sought the mechanics of Chapter 11 for the purpose of rehabilitation and a fresh start." That reasoning applies to a voluntary Chapter 7.

At best the movants have argued that dismissal would not put the Debtor in a different position than if it is in Bankruptcy Court. In support of their argument they note that both the United States and the State of Ohio have opposed the automatic stay in their respective actions and that courts seem united in overruling automatic stays in environmental actions. Should the stay be lifted to allow the Federal and State court actions to continue the Debtor would have the additional expense of litigating in a third forum. While the movants' arguments are strong and are considered for dismissal under § 707(a) they do not reach the level of showing that dismissal would be in the Debtor's best interests. Therefore, the court finds the Debtor's motion to be well taken and will not dismiss the case under § 305.

On the other hand, the court must look at the dismissal question in light of § 707(a). Section 707 provides dismissal may be made for "cause." Section 707 includes as cause two situations that do not apply to the present matter. However, the legislative history states that the listed causes "are not exhaustive but merely illustrative." The State referred the court to § 707(a) by citing the case of *In re Charles George Land Reclamation Trust*, 30 B.R. 918 (Bankr.D.Mass.1983) ("Charles"). The facts in *Charles* are similar to those in the present matter.

The Debtor in *Charles* owned a waste disposal facility which accepted hazardous materials. Prior to filing bankruptcy the Debtor in *Charles* agreed to the entry of a consent judgment which required him to pay a civil fine and to bring the landfill into

compliance with applicable environmental laws and regulations. That entry was amended and subsequently the Debtor in another State court action was ordered to make payments into a trust fund. The Debtor defaulted on those payments and thereafter filed for protection under Chapter 11 of the Bankruptcy Code. The Chapter 11 case was subsequently converted to a case under Chapter 7.

In *Charles* the State contended that the Trustee would have to immediately bring the dump site into compliance with environmental regulations or he would find himself in violation of 28 U.S.C. § 959(b). Furthermore, the State argued the Trustee must comply with previously issued injunctions regarding operations of the site and that the claims of the Federal and State agencies against the estate resulting from cleaning up the dump site was estimated at 5–10 million dollars which would have rendered any dividend to unsecured creditors inconsequential.

Judge Lawless in *Charles,* gave the following reasons why he felt dismissal of the case pursuant to § 707 was appropriate:

> It was impossible for any Trustee to manage the Debtor's site in compliance with State law and thus meet the requirements of 28 U.S.C. § 959(b). Id. at 923.

> \* \* \* \* \* \*

> This was not a bankruptcy case where assets could be liquidated, claims adjudicated and a distribution made within a relatively short period of time, but rather it was and is an ongoing environmental nuisance that threatens the health, safety and well-being of the people who surround it. The dismissal of this case was a recognition by this Court that the appropriate forum to redress and correct this environmental nuisance in the most expeditious and efficient manner was the State court. This Court had neither the resources, the expertise or, for that matter, a suitably qualified trustee with experience in hazardous waste management, to do other than to allow the resolution of this matter by the continuing efforts of the appropriate state court. Id. at 924.

The Court finds the reasoning of Judge Lawless persuasive and that it should be applied to the facts of the case sub judice. In addition, it is important to note that in *Charles* the court placed the health, safety and well being of the community above all other considerations in deciding to dismiss the case.

The United States Supreme Court in *MidAtlantic National Bank v. New Jersey Department of Environmental Protection,* —— U.S. ——, ——, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986) clearly made the common welfare paramount when it interpreted § 554(a) as showing that "Congress has expressly provided that the efforts of the Trustee to marshall and distribute the assets of the estate must yield to governmental interest in public health and safety." The sole issue in that case was whether § 554(a) permits a Trustee to abandon property in contravention of State laws or regulations that are reasonably designed to protect the public's health or safety. *Id.* at —— n. 2, 106 S.Ct. at 758 n. 2. The court held that the Bankruptcy Court could not authorize abandonment "without formulating conditions that will adequately protect the public's health and safety." *Id.* at ——, 106 S.Ct. at 762.

This court would not dismiss the case if it appeared that the only thing between a hazardous waste site and allowing it to continue as a threat to the community was a Bankruptcy Court. Fortunately, that is not the situation before the court. In this case both the Federal and State environmental agencies are aware of the problem and ready to take action as soon as they are free from the restrictions of the automatic stay. While the site will require cleanup by professionals to eradicate the potential danger, at this time the site is surrounded by a fence and no additional materials are being accepted at the site. Therefore, the court believes no additional risk to the public will occur as a result of allowing the Federal and State authorities

to pursue their causes of action without the interference of the Bankruptcy Court.

If the court exercised its jurisdiction over this case the Trustee would be obligated to clean up the site. In *MidAtlantic, supra,* the Supreme Court relying on 28 U.S.C. § 959(b) held a Trustee cannot abandon property if it would violate state laws. The Supreme Court in its recent decisions has clearly stated that the Trustee has an affirmative duty to make the hazardous waste site comply with state laws. *MidAtlantic, supra* at ——, 106 S.Ct. at 760, citing *Ohio v. Kovacs,* 469 U.S. ——, 105 S.Ct. 705, 83 L.Ed. 649 (1985) which held:

> Finally, we do not question that anyone in possession of the site—whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver *or the bankruptcy trustee* —must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions. (Emphasis added.)

Therefore, the Trustee will be liable for failing to clean up the site as well as for any injuries resulting from such failure. The court does not believe that the trustee who is unfamiliar with hazardous waste disposal should bear such an onerous burden.

Economy and expeditious removal of the hazardous wastes are additional factors which pursuades the court to dismiss the present matter. Testimony at the hearing indicated that over $43,000 was spent on legal fees just to reach the consent entries for temporary restraining orders. Accepting the Debtor's valuation of its assets (which is $40,000 higher than an appraisal report filed by the Trustee) still leaves only $100,000 in excess of the liabilities listed in the Debtor's petition. The Federal and State claims are not included in that figure. It is readily apparent that the legal fees that would result from pursuing this case in three forums would readily dissipate any assets, not to mention the large cleanup costs involved. In addition, due to the serious danger posed to the community by the toxic wastes the court believes the Federal and State authorities should be given full and complete control of the site as soon as possible. Placing the Trustee in charge of that task would only slow down the cleanup, thereby increasing the chance of harm and danger to the public.

The State argues that the cleanup costs should be deemed administrative expenses. Recently Judge Harold F. White in the case of *T.P. Long Chemical, Inc.,* 45 B.R. 278 (Bankr.N.D.Ohio 1985) ruled that the cost of cleaning up a hazardous waste site which was property of the estate should be treated as an administrative expense. *Cf.* Hennington, *Accomodating Regulatory Enforcement and Bankruptcy Protection.* Am.Bankr.L.J. Vol. 59 at 1 (Winter 1985) (Cleanup costs resulting from prepetition claims should not be given administrative priority). While that issue need not be decided here it is clear that the environmental agencies have claims against the estate and that the size of those claims would render any distribution to creditors de minimus.

The Supreme Court in *Kovacs* held that the State had a claim as it is defined by § 101(4) of the Bankruptcy Code. The Federal and State claims have not been liquidated but the estimates provided by the Ohio E.P.A. indicate cleanup will cost between 17 and 33 million dollars. The court finds that liquidating the estate in Bankruptcy Court for the purpose of distributing funds to creditors would be an exercise in futility and that the case should be dismissed.

The Debtor argues against dismissal since it contends that it is entitled to defend itself against the State and Federal actions and that the property of the estate should be made available for the payment of counsel fees in doing so. The Debtor contends that it is prohibited from defending itself in State court by paragraph 3 of the modified temporary restraining order of October 11, 1985. That order which the Debtor agreed to with the assistance of

counsel requires that its assets be preserved for closing and cleaning up the facility. If the Debtor agreed to not spend its assets on a trial on the merits, when it was represented by counsel, then it must present arguments to the State Court Judge convincing him why it should not be bound by the terms of its own agreement. It is important to note that the Debtor spent over $43,000 in legal fees to negotiate the Federal and State temporary restraining orders.

Finally, the Debtor questioned the extent to which the dump site actually is contaminated. State EPA investigators testified that random samples of 55 gallon drums, large storage tanks and a 4.25 million gallon lagoon proved PCB's and other highly toxic materials were present. Inspection also revealed improper storage of highly flammable naptha near other toxic wastes which creates a danger of fire and highly toxic gases being released into the atmosphere. The Debtor offered no evidence to contradict these findings. Instead it suggested that perhaps these were isolated spots and that further testing would show that the problem was isolated to those areas. While it may be possible (though highly improbable) inspectors picked the only 8 drums out of 190 that contained hi-flash naptha, it goes beyond reason to suggest that the random samples from the lagoons just happened to find tiny pockets of PCB's which were the only contaminated parts. The State presented testimony that 100% testing can cost more than actual cleanup. The burden was on the Debtor to controvert the facts that the dump site is hazardous because it contains PCB's but it failed to present even the slightest bit of evidence to prove otherwise. Accordingly, the court must find that the waste site is contaminated with PCB's.

In conjunction with finding that the site is contaminated, the court accepts the EPA's estimates of cleanup costs. Mr. Myers, who prepared the estimates, stated he has been involved with many cleanup projects and that none have been completed under budget.

## CONCLUSION

In summary, the court decides to dismiss the present matter for "cause" under § 707 and not under § 305. The court finds § 305 inappropriate because the movants failed to show dismissal would be in the best interests of the Debtor. The reasons which constitute "cause" under § 707 include the health, safety and welfare of the public, the lack of experience of the court and the Trustee in cleaning up hazardous wastes, the delay and expense of adding a Bankruptcy case to the Federal and State court actions, and finally that any possible distribution to creditors would be inconsequential thus making administration of the case an exercise in futility.

In light of the foregoing reasons, it is hereby

ORDERED that the action entitled *State of Ohio, ex rel. Anthony J. Celebrezze, Jr., Attorney General of Ohio, Plaintiff vs. Commercial Oil Service, Inc., et al., Defendants* be, and it hereby is remanded to the Court of Common Pleas, Lucas County, Ohio. It is further

ORDERED that this case be, and it hereby is, dismissed.