In re COLORADO INDUSTRIAL BANK OF FORT COLLINS, a Colorado Corporation, a.k.a. Fort Collins Colorado Industrial Bank, Debtor.

Bankruptcy No. 87 B 13510 C.

United States Bankruptcy Court, D. Colorado.

March 31, 1988.

Barbara M.A. Walker, Asst. Atty. Gen., Denver, Colo., for plaintiff.

Glen E. Keller, Jr., David R. Garfield, Davis, Graham & Stubbs, Denver, Colo., for defendant.

## ORDER ON THE MOTION TO DISMISS OR ABSTAIN

PATRICIA A. CLARK, Bankruptcy Judge.

This matter comes before the Court on the motion of the Colorado State Bank Commissioner requesting that the Court dismiss or abstain from hearing the petition filed by the Colorado Industrial Bank of Fort Collins for relief under Chapter 11 of the Bankruptcy Code. The United States Trustee and three depositors joined in this motion. The Industrial Bank Savings Guarantee Corporation, a non-profit corporation created under state law to provide protection for deposits made in Colorado industrial banks, filed an *amicus curiae* brief in support of the motion to dismiss or abstain. (The parties in support of the Motion to Dismiss or Abstain hereinafter will be collectively referred to as the "Commissioner").

The Commissioner contends that the debtor is ineligible for relief under 11 U.S.C. § 109(b)(2) and (d). Alternatively, the Commissioner asserts that if the debtor is deemed to be eligible for protection under Section 109 of the Bankruptcy Code, then the bankruptcy court should nonetheless abstain from exercising its jurisdiction in this case pursuant to 11 U.S.C. § 305(a)(1). The primary basis for the Commissioner's contention that the Colorado Industrial Bank of Fort Collins should not be a debtor in the bankruptcy court is the existence of a Colorado statutory scheme for either liquidating or reorganizing this industrial bank under the provisions of Section 11–22–101, C.R.S., *et seq.*

The debtor opposes the Commissioner's motion to dismiss or abstain by contending that the Colorado Industrial Bank of Fort Collins is eligible for relief under Section 109(b)(2) of the Bankruptcy Code. In addition, the debtor contends that the Commis-

sioner has not demonstrated adequate grounds for abstention under Section 305(a)(1) of the Bankruptcy Code because of the Commissioner's failure to show any benefit to the debtor resulting from abstention.

The essential facts as presented to this Court are as follows. The debtor is an "industrial bank" as defined by Section 11–22–101, C.R.S., and is chartered as an industrial bank in the State of Colorado. On November 2, 1987, the Colorado State Bank Commissioner invoking the powers of Article 22 of Title 11, C.R.S., took possession of the Colorado Industrial Bank of Fort Collins and ordered a freeze on its deposits. On November 9, 1987, the debtor filed a voluntary petition for relief under Chapter 11. On November 17, 1987, pursuant to a stipulation entered into by the debtor and the Colorado State Bank Commissioner, which was approved by this Court, the debtor's property was returned to its pre-possession management.

■ Initially this Court must determine whether the debtor is eligible for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 109(d) provides:

> Only a person that may be a debtor under Chapter 7 of this title, except a stock broker or commodity broker, and a railroad may be a debtor under Chapter 11 of this title.

Section 109(b)(2) provides that:

> (b) A person may be a debtor under chapter 7 of this title only if such person is not ... (2) a domestic insurance company, bank, savings bank, co-operative bank, savings and loan association, building and loan association, homestead association, credit union, *or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h));....* (Emphasis added.)

The determination of this Court's jurisdiction over the debtor revolves around the construction of the highlighted language of Section 109(b)(2). The debtor does not have FDIC insurance and, therefore, the Commissioner and the debtor both agree

that the debtor is not an "insured bank" under the Federal Deposit Insurance Act, as defined under 12 U.S.C. § 1813(h).[1]

The term "industrial bank" is not defined in the Bankruptcy Code, but an examination of the legislative history surrounding this clause indicates that the debtor is an industrial bank as that term is used in Section 109(b)(2). The Garn–St. Germain Act, which became effective on October 15, 1982, added the following language to Section 109(b)(2) of the Bankruptcy Code: "industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h))." The Senate Report, No. 97–536, U.S.Code Cong. & Admin.News 1982, p. 3054, of the Senate Bill that eventually became the Garn–St. Germain Act indicates that the term "industrial bank" in Section 109(b)(2) was meant to include a financial institution of the debtor's type:

> The bill also contains an amendment making industrial banks and like type institutions eligible for Federal Deposit Insurance. Industrial banks, industrial loan companies, industrial loan and thrift companies, loan and investment companies, are all names for state financial institutions which extend installment credit to consumers and accept some form of savings deposit from their customers. These institutions are chartered

and supervised under state industrial banking or industrial loan laws. The purpose of these amendments is to permit this type of financial institution to be eligible for membership in the FDIC on the same basis as other state financial institutions which offer the same or similar services to the public. S.Rep. No. 97–536, 97th Cong.2nd Sess. 71 (1982). U.S.Cong. and Admin.News 1982, at p. 3097.

Pursuant to Section 11–22–107, C.R.S., and Section 11–22–108, C.R.S., the debtor, as a chartered industrial bank in the State of Colorado, has the right to accept savings deposits and make installment loans. However, unlike state chartered commercial banks and national banks, the debtor is prohibited from carrying demand bank accounts. *See* Section 11–6–102, C.R.S.; *See also Southern Industrial Banking*, 59 B.R. 978, 983–984 (E.D.Tenn.1986).

Pursuant to the plain meaning of the relevant language of Section 109(b)(2) of the Bankruptcy Code, together with attendant legislative history, this Court can only conclude that the debtor is an industrial bank. Since it is not insured under the provisions of the Federal Deposit Insurance Act there appears to be no justification to classify this debtor as anything other than an entity which is eligible for Bankruptcy Code protection.[2]

---

1. Section 1813(h) of the Federal Deposit Insurance Act provides:

   The term "insured bank" means any bank (including a foreign bank having an insured branch) the deposits of which are insured in accordance with the provisions of this Act; and the term "noninsured bank" means any bank the deposits of which are not so insured.

2. The judicial interpretation and construction of the language of Section 109(b)(2) of the Bankruptcy Code has often been called the "independent classification test," which is one of three tests often used by courts in interpreting the jurisdiction of the bankruptcy court under that section. *See In re Republic Trust & Savings Company*, 59 B.R. 606 (Bankr.N.D.Okla.1986). The other two tests often employed to determine bankruptcy court jurisdiction are the "state classification test," which emphasizes the categorization, status, and operation of an entity under non-bankruptcy state law, and the "alternate relief test," which attempts to evaluate the relative merits of an alternative state scheme of

liquidation or reorganization in comparison with the scheme presented under the Bankruptcy Code. *See also In re Southern Industrial Banking Corporation*, 59 B.R. 978 (E.D.Tenn. 1986).

Since this court's decision regarding its jurisdiction over the debtor is based upon a compelling application of the fundamental canons of judicial statutory construction, the court found it unnecessary to resort to the other two tests. Moreover, the court is convinced that the "state classification test" is inappropriate for determining jurisdiction because its utilization would result in an abdication of a federal court's responsibility to interpret federal law. No state scheme can override Congress's own intention as to who should be eligible for bankruptcy relief and the mere fact that a debtor is an industrial bank as defined by state law is not dispositive of the issue of federal jurisdiction under the Bankruptcy Code.

In a similar vein, the "alternate relief test" is also inappropriate as a means of determining this Court's jurisdiction. An evaluation of a

The Commissioner, however, asks this Court to ignore the plain meaning of Section 109(b)(2) in order to focus on the underlying policy behind the creation of an exempt set of entities from eligibility under the Code. In particular, the Commissioner contends that the legislative history of Section 109 in 1978 (before the amendment adding the relevant language in 1982) demonstrates that this section was added to the Code to exclude all types of banking institutions from eligibility due to the existence of alternative liquidation and reorganization schemes for these entities under state or federal regulatory law. *See* S.Rep. No. 989, 95th Cong.2nd Sess. 31 (1978), U.S. Code Cong. & Admin.News 1978, at pp. 5787, 5817. *A fortiori,* the Commissioner contends that the existence of a Colorado statutory scheme for reorganizing or liquidating industrial banks thereby deprives this Court of jurisdiction over the debtor. However, the Commissioner's reliance on this legislative history is misplaced because it ignores the subsequent legislative history and because it ignores a fundamental rule of statutory construction.

■ In interpreting the portion of Section 109(b)(2) at issue, the Court adopts the general rule of statutory construction that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded. *Expressio unius est exclusio alterius. Cash Currency Exchange, Inc. v. Shine,* 762 F.2d 542, (7th Cir.1985); 2A *Sutherland Statutory Construction* § 47.23 (1973 and Supp.1983). The list of entities to be excluded from jurisdiction of the bankruptcy court under Section 109(b) is therefore deemed to be exhaustive, and this Court can only conclude that, as a result, Congress wanted to include under the bankruptcy court's jurisdiction all non-FDIC insured industrial banks.

■ Moreover, as noted earlier, the legislative history relating to the addition of the subject clause in Section 109(b)(2) demonstrates that the focus of the determination of a debtor's eligibility under that section is on the presence of FDIC insurance, and not on a comparison of competing state statutory legislation or reorganization schemes.[3] An insolvent financial institution whose deposits are insured by the FDIC is afforded a non-bankruptcy, federal statutory scheme for liquidation or reorganization under the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.* Since

---

substitute state scheme for liquidation or reorganization, as called for by that test, is more appropriate under the context of Section 305(a) of the Bankruptcy Code involving abstention. The legislative history of Section 305(a) corroborates this view of the conceptual relationship between jurisdiction in the bankruptcy court and abstention:

A principle of the common law requires a court with jurisdiction over a particular matter to take jurisdiction. This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction ... Thus, the court is permitted, if the interests of creditors and the debtor would be better served by dismissal of the case or suspension of all proceedings in the case, to so order.... House Report No. 95–595, 95th Cong., 1st Sess. (1977) 325; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 35, U.S. Code Cong. & Admin.News 1978, pp. 5787, 5821, 6281.

The creation of the bankruptcy court's jurisdiction is statutory and constitutional; such jurisdiction does not depend on what a state court or a state legislative scheme might or might not do under certain circumstances.

**3.** A good analysis of the legislative history surrounding the adoption of the language adding industrial banks without FDIC insurance under Section 109(b)(2) of the Bankruptcy Code is found in *In re Southern Industrial Banking Corp.,* 59 B.R. 978, at 985 (E.D.Tenn.1986):

The Garn–St. Germain Act, which became effective on October 15, 1982, added to S. 109(b)(2) the words "Industrial bank or similar institution which is an insured bank as defined in S. 3H of the Federal Deposit Insurance Act (12 U.S.C. S. 1813H....)" One purpose of Garn–St. Germain, which dealt with numerous portions of the federal banking laws as well as 11 U.S.C. S. 109(b)(2) was to expand the availability of the insurance and liquidation procedures of the FDIC to "industrial banks and like type institutions." S.Rep. No. 907–537, 97th Cong.2nd Sess. 71 (1982). U.S.Code Cong.Admin.News (1982) at pp. 3054, 3125. Therefore, because this insurance, and presumably the accompanying FDIC liquidation procedures, were made available to these entities, the Act provided that "an industrial bank or similar institution" which has FDIC insurance is excluded from bankruptcy.

the Federal Deposit Insurance Act provides a separate scheme of liquidation or reorganization in place of that provided for under the Bankruptcy Code, this Court is convinced that the exemptions of Section 109(b)(2) should be interpreted narrowly, leaving to the jurisdiction of the bankruptcy courts all of those financial entities that do not have FDIC insurance.

This Court's determination that the Colorado Industrial Bank of Fort Collins is a debtor under 11 U.S.C. § 109(b)(2) does not necessarily mean that the Court will exercise its jurisdiction over the debtor. The Commissioner contends, as an alternative grounds for dismissal, that the Court should abstain under 11 U.S.C. § 305(a)(1) because the interests of the creditors and the debtor would be better served by allowing the Colorado Industrial Bank of Fort Collins to be either liquidated or reorganized under Colorado State law.

11 U.S.C. § 305(a) provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; ....

Under Colorado law, an industrial bank may be reorganized or liquidated under a statutory scheme provided for in Sections 11–22–101 to 11–22–613, C.R.S. (1988). At the evidentiary hearing held before this Court on February 19, 1988, the Commissioner, in support of its motion to dismiss or abstain, presented evidence surrounding the efficacy of the State scheme in dealing with distressed industrial banks. In particular, the Commissioner focused its evidence on the new statute passed on February 4, 1988, which gave the. Colorado State Bank Commissioner the authority to not only liquidate, but reorganize industrial banks. The evidence presented surrounding the implementation of this new statute was apparently proffered in an effort to respond to some of the concerns expressed by Judge Brooks in his Memorandum, Opinion and Order of January 29, 1988, in *In re Bankwest Boulder Industrial Bank,*

82 B.R. 559 (Bankr.D.Colo.1988), wherein Judge Brooks denied the Commissioner's motion to dismiss or abstain in part because the State's statutory scheme at the time of that hearing only envisioned a liquidation of an industrial bank.

■ At the close of the Commissioner's evidentiary presentation, the debtor moved to dismiss the Commissioner's motion on the basis that the Commissioner had failed to present any evidence whatsoever that the interests of the debtor would be best served by a dismissal or suspension of the proceedings. An examination of the record indicates that there was no evidence presented by the Commissioner with regard to the interests of the debtor under Section 305(a)(1). Instead, the focus of the Commissioner's evidentiary presentation was on how the State's scheme would benefit the depositors because, under Section 11–22–613, C.R.S. (1988), the bank receiver, which is appointed by the Commissioner to either reorganize or liquidate an industrial bank, is obligated to "act in the best interests of depositors, to protect their deposits, and to maximize the return of funds to them in the most equitable and expeditious manner possible under the circumstances."

Although this Court recognizes that the interests of depositors are of extreme importance in any reorganization or liquidation of an industrial bank, their interests are not the only interests that must be protected by the bankruptcy court. The interests of the debtor, as well as other creditors, must also be considered and afforded some guaranteed means of due process consideration in the context of any liquidation or reorganization scheme. *See also In re G–N Partners,* 48 B.R. 459 (Bankr.Minn.1985); *In re Commercial Oil Service, Inc.,* 58 B.R. 311 (Bankr.N.D.Ohio 1986). Therefore, for the reason of the Commissioner's failure to make out a prima facie case under Section 305(a)(1), this Court without more could dismiss the Commissioner's motion to abstain.

■ However, notwithstanding the lack of evidence presented with regard to the best interests of the debtor, this Court finds that there are serious deficiencies

that exist within the State's statutory scheme of reorganization or liquidation such that it would not be prudent for this Court to abstain from exercising its jurisdiction under the Bankruptcy Code.

As mentioned earlier, the Court is concerned that the bank receiver is empowered to act only in the best interests of depositors without considering the interests of other creditors or the debtor. The Colorado statute provides for a preliminary report to be prepared and filed by the bank receiver, only after "reasonable efforts" to consult with a bank's directors, shareholders and the FDIC. The Colorado State Bank Commissioner, with the approval of the Executive Director of the Superintendent of Regulatory Agencies, and apparently without notice and opportunity for a hearing to any parties in interest, decides on the basis of this report alone whether the industrial bank should be reorganized or liquidated. *See* Section 11–22–613(4)(a)(II) and (III).

Moreover, an examination of the State's statutory scheme discloses that only the bank receiver appointed by the Colorado State Bank Commissioner can devise a plan of reorganization. That plan of reorganization is not subject to any review or approval by the debtor, the creditors, or any court whatsoever, but it is subject only to the review of the Colorado State Bank Commissioner. *See* Section 11–22–613(4)(a)(IV), C.R.S. (1988).

Nowhere in the State statutory scheme is there a comprehensive standard for evaluating the provisions of any plan of reorganization. The evidence before the Court indicates that the only standards to be applied by the bank receiver and the Colorado State Bank Commissioner are the informal and amorphous standards of good business judgment, viability, workability, and maximization of return to depositors.

Nowhere in the State scheme is there a means of disclosing relevant, material information to creditors or the debtor of decisions that might affect their contract or property rights. Apparently the creditors and debtor must yield blindly the protection of these rights to the state receiver and the State Bank Commissioner.

In addition, due to the relatively sheltered nature of the state scheme of reorganization and liquidation, the Court is concerned about the structure and independent control of the entity that has been recently appointed as the bank receiver. Financial Management Task Force, Inc., "Financial," was appointed as the bank receiver pursuant to Section 11–22–613, C.R.S., for those industrial banks not presently under this Court's jurisdiction. This entity would also presumably be appointed as the bank receiver to administer the provisions of the State scheme of reorganization or liquidation of the debtor should this Court abstain under Section 305(a)(1) of the Bankruptcy Code. Financial is composed of five principals. One of the principals is a partner in an accounting firm and another is a partner in a law firm. The accounting firm and the law firm of these two principals have been hired by Financial to assist it in fulfilling its obligations under the State statutory scheme. Testimony at the hearing indicated that the professional fees charged by the accounting and law firms for their work for Financial will be reviewed by the two partners of such firms who are also principals of Financial. In addition to the compensation provided to the professional accounting and law firms hired by Financial, the individual members of Financial will also receive hourly compensation for their work as members of the state-appointed receiver. All of these administrative costs are to be paid from the assets of those industrial banks under the jurisdiction of the State. Although all fees and expenses are to be ultimately approved by the state district court where the industrial bank is located, the lack of complete adjudicatory oversight afforded the state district courts with regard to the plan of reorganization and the representation of all parties in interest raise some grave concerns as to the nature of any effective review of those fee applications.

In contrast to the State statutory scheme, the specialized nature of the bankruptcy court provides it with unique experience in dealing with complex reorganization or liquidation proceedings and in effec-

tively balancing the interests of creditors and debtors alike while maintaining some control over the professional fees that can be charged against an estate. Moreover, the litigative framework of a Chapter 11 or Chapter 7 proceeding under the Bankruptcy Code is such that it affords all parties in interest an opportunity to participate in protecting their claims and interests and in providing some input in reorganizing a debtor as a going-concern. Accordingly, this Court finds, as an alternative basis for denying the State's motion to abstain, that Chapter 11 of the Bankruptcy Code is a much more effective means of combining complete due process representation together with meaningful, independent judicial review over proceedings that will impact hundreds of lives and claims involving thousands of dollars.[4]

▇ Finally, the Court holds that the notice regarding the hearing on the motion to dismiss or abstain was deficient, and this too is an alternative basis for dismissing the Commissioner's motion to dismiss or abstain.

Dismissal of this Chapter 11 case was sought by the Commissioner pursuant to 11 U.S.C. § 1112(b) which provides in pertinent part:

On request of a party-in-interest or the United States Trustee, and *after notice and hearing,* the Court may convert ... or ... may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including.... (Emphasis added.)

Cause can include many different reasons and circumstances as delineated in that section, and may also include the failure of an entity to qualify as a debtor under Section 109(b) and (d) of the Bankruptcy Code.

The phrase "notice and hearing" is defined as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; ...." 11 U.S.C. § 102(1)(A). The Court is mindful that a hearing on the dismissal of this industrial bank from the bankruptcy court is an extremely important proceeding. The determination as to the dismissal of this debtor could substantially affect the rights and remedies of all creditors, including those of depositors, and could indeed impair the ability of some depositors to protect their respective interests and, indeed, some or all of their life savings.

As delineated in Judge Brooks' opinion, *In re Bankwest Boulder Industrial Bank, supra* at p. 561, procedural due process and adequate notice to all parties in interest, including the depositors, is not merely a courtesy to be dispensed with for the sake of the convenience of the Colorado State Bank Commissioner. In any judicial proceeding, due process requires that individualized notice be given where practical before rights can be affected. *See In re Blumer,* 66 B.R. 109 (9th Cir.B.A.P.1986). An examination of the record indicates that approximately 1,400 creditors and interest holders exist in this case, and the addresses of each one of those individuals was provided as part of the record and made available to the Commissioner long in advance of the hearing on February 19. This Court has often found that the existence of creditors of this number, or of an even greater number, does not preclude mailing notice to all parties in interest in compliance with the statute and in compliance with the United States Constitution.

Indeed, the Supreme Court of The United States has held in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) that notice by publication is insufficient where notice by personal service through mailing could be accomplished.

**4.** This Court recognizes that it is not its province to act in supreme judgment over the efficacy of state laws. Yet, a dismissal of case under Section 305(a) is to be used sparingly, only in limited circumstances because the decision is non-appealable. *See In re Central Mortgage and Trust, Inc.,* 50 B.R. 1010 (D.C.Tex.1985). The language and purpose of Section 305(a)(1) require this Court to exercise its discretion of abstention only upon a comprehensive examination of the alternative forums available to claimants and litigants. In the absence of a state reorganization scheme that provides fairness and representation to all parties in interest, this Court cannot abdicate its jurisdiction.

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances to appointed parties of the pendency of the action ... where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 314 and 318, 70 S.Ct. at 657 and 659.

Accordingly, the notice provided by the Commissioner is deemed inadequate and insufficient as a matter of law.[5]

In conclusion, the Court finds that based upon the pleadings, the briefs, and the evidence presented, the Colorado Industrial Bank of Fort Collins qualifies as a debtor pursuant to 11 U.S.C. § 109(b) and (d). The Court will not abstain from exercising its jurisdiction under Section 305(a) of the Bankruptcy Code on the basis of three alternative .grounds: (1) the failure of the Commissioner to present any evidence that a dismissal of this proceeding would be in the best interests of the debtor, (2) the serious deficiencies in the State statutory scheme for reorganization or liquidation, and (3) the lack of constitutional and statutory notice to all creditors, depositors and interest holders in order to provide them with an opportunity to participate at the hearing on February 19, 1988.

ORDERED that the Commissioner's motion to dismiss or abstain is hereby denied.

5. This Court was mislead into signing an Order approving the restricted notice to the debtor's twenty largest creditors and other parties in interest as well as signing an Order retroactively approving notice by publication in two newspapers through inaccurate representations as to the urgency of the Commissioner's pending motion to dismiss or abstain. The Commissioner represented, in an *ex parte* motion filed on December 30, 1987, that failure to obtain prompt approval of the motion to limit notice would result in depositors being denied participation in the Commissioner's plan of liquidation. In fact, no plan was available on the hearing date on February 19, 1988. No evidence of exigent circumstances was ever demonstrated to this Court. Therefore, the two Orders have been rescinded as improvidently granted.