**In The Matter of RIS INVESTMENT GROUP, INC., Debtor.**

**No. 03–31902–BKC–SHF.**

United States Bankruptcy Court, S.D. Florida.

Sept. 17, 2003.

Robert C. Furr, Furr and Cohen, P.A., Boca Raton, FL, for Debtor.

Patricia Dzikowski, Fort Lauderdale, FL, trustee.

## MEMORANDUM OPINION DENYING THE MOTION OF INDIAN SPRING COUNTRY CLUB, INC. TO DISMISS CHAPTER 7 BANKRUPTCY CASE OR TO ABSTAIN

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came before the Court on July 23, 2003, upon the Motion of Indian Spring Country Club, Inc., ("Indian Spring") To Dismiss Chapter 7 Bankruptcy Case Or To Abstain. Indian Spring seeks to dismiss the Chapter 7 case of RIS Investment Group, Inc. ("debtor") pursuant to 11 U.S.C. § 707(a), or in the alternative, seeks to have the Court abstain from hearing this case pursuant to 11 U.S.C. § 305(a). The debtor filed a response to the Motion and Indian Spring filed a Reply Brief. Prior to the hearing, the parties filed a Stipulation of Uncontested Facts (C.P.21) and Indian Spring filed a number of exhibits which were admitted without objection. The Court heard the testimony of the debtor's President, Leonard Greenberg, the Trustee's counsel, John Walsh, and state court counsel for the debtor, Adam Rabin. The Court, having reviewed the testimony and evidence presented, considered the arguments of counsel and being otherwise fully advised in the premises, denies the Motion to Dismiss Chapter 7 Bankruptcy Case or to Abstain.

This case was commenced with the debtor's filing of its voluntary chapter 7 Petition on April 15, 2003. Patricia Dzikowski is the Chapter 7 Trustee. In 1984, the debtor purchased the Indian Spring development from Cadillac Fairview, a real estate developer. At that time, there were 2500 units planned for this community with approximately 900 units constructed. The debtor bought the remaining property and the country club from Cadillac Fairview and proceeded to complete the development of the property. In addition to the home sites, the property consisted of a country club building, two 18-hole golf courses, 20 tennis courts, a pool, additional dining facilities, office facilities, and golf property and equipment. The debtor, subject to a January 4, 1988 Agreement to Turnover, turned over the country club assets to Indian Spring Country Club in 1994. At the time of the turnover, the debtor still owned additional developable property in Indian Spring.

In 1994, Indian Spring commenced an action in the Circuit Court for the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida, Case No. CL 94–5025–AO, alleging causes of action for breach of contract and breach of warranty relating to the construction, design, and maintenance of the club (the "Construction Litigation"). This litigation remains pending.

During the years since the commencement of the state court litigation, the debtor continued to develop its remaining real property in Indian Spring and, in partnership with Harris Boca Grove Limited, developed some real property at a country club in Boca Raton known as Boca Grove. The owner of Harris Boca Grove Limited, Robert Mufson, passed away several years ago at which time the debtor purchased

Mr. Mufson's interest in the remaining properties in Boca Grove and sold them off.

On or about May 2, 2001, Indian Spring commenced a second action against the debtor and its principal shareholder, Leonard Greenberg, seeking damages for fraudulent conveyances of property and to pierce the debtor's corporate veil. This case is styled *Indian Spring Country Club, Inc. v. RIS Investment Group, Inc. f/k/a The Resort at Indian Spring, Inc. and Leonard Greenberg,* Case No. CA 01–4674–AO (Fifteenth Judicial Circuit of Florida, in and for Palm Beach County) (the "Fraudulent Conveyance Litigation"). The debtor and Leonard Greenberg dispute the claims set forth in the Fraudulent Conveyance Litigation. This second action has been stayed pending resolution of the matters in the Construction Litigation.

The debtor's principal, Leonard Greenberg, is 76–1/2 years old. During the litigation with Indian Spring, Albert Proujansky, an in-house attorney and trusted advisor to Mr. Greenberg for 16 years, actually handled the litigation for the debtor. During the course of both state court actions, Mr. Greenberg has been a resident and continues to be a resident at Indian Spring and is, in fact, a member of the Indian Spring Country Club, which is the movant in this case.

Mr. Greenberg testified that the debtor has spent over $750,000 in attorney's fees defending the Construction Litigation. The litigation has been the subject of three mediations, none of which has been successful. In December, 2001, Mr. Proujansky passed away at the age of 86. Mr. Greenberg testified that because of the loss of Mr. Proujansky, he asked his attorneys to seek one additional mediation, which occurred in March, 2003, and which was not successful. At that time, and with the construction litigation set for trial commencing April 21, 2003, Mr. Greenberg sought the advice of bankruptcy counsel and placed the debtor into Chapter 7 bankruptcy on April 15, 2003. According to Mr. Greenberg, this Chapter 7 case was filed by the debtor because the debtor could no longer afford to continue litigation of the Construction Litigation with Indian Spring Country Club.

The schedules filed by the debtor (Exhibit 4) reflect the ownership of a 1.47 acre parcel of property located at Indian Spring Country Club, having an estimated value of $200,000. In addition, the schedules reflect a bank account in the amount of $39,934.30 and an account receivable due from PBC Holdings, Inc., an insider of the debtor, in the amount of $45,411.18. Equipment and office furnishings are scheduled with a value of $2,555.00.

Mr. Greenberg testified that PBC Holdings, Inc. was now in a position to pay the receivable and, in fact, shortly will be paying the Trustee the $45,411.18. The Trustee's counsel, John Walsh, testified that the Trustee had obtained possession of the funds from the bank account, had received books and records from the debtor as requested, and had received complete cooperation from the debtor in the administration of this case. The real property is partially occupied by another company owned by Leonard Greenberg, which is paying the Trustee rent for the use of the property, pending resolution of this Motion and liquidation of the property. Rental in the amount of approximately $20,000 per year is being received by the trustee, and the debtor estimates the value of this property at $200,000.

The schedules of the debtor reflect that there exist no secured or priority claims, and that the only unsecured claims consist of (i) $25,193.00 due to Ackerman, Link and Sartory, the debtor's pre-petition counsel; (ii) $10,000,000 as a disputed

claim of Indian Spring; and a(iii) contingent claim of Wachovia Bank of $44,100. On April 8th and 9th, the debtor transferred two Cadillac automobiles and a Toshiba copier to PBC Holdings, Inc. Mr. Greenberg testified that the automobiles and copier were transferred in order to assure that the vehicles and copier would not be part of the debtor's bankruptcy estate as of the petition date. The two vehicles were used by Mr. Greenberg and his wife for business purposes, and Mr. Greenberg expressed a desire to retain possession of the vehicles in the hope of purchasing the vehicles from the trustee.

### The Motion to Dismiss under § 707(a)

Indian Spring Country Club seeks dismissal of this case under 11 U.S.C. § 707(a), which states as follows:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including-

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

None of the specifically-delineated grounds for dismissal under sub-sections (1), (2) and (3) of § 707(a) are present in this case. The Court must look to the term "for cause" contained in § 707(a) to determine whether a sufficient basis exists to dismiss a corporate chapter 7 bankruptcy under these circumstances.

The case law is not conclusive as to whether § 707(a) contains a good faith filing requirement ("GFFR"). There are three lines of cases pertinent to this Court's analysis in this regard. The first line of cases states that there is no GFFR for filing a chapter 7 petition. *In re Padilla*, 222 F.3d 1184 (9th Cir.2000); *In re Etcheverry*, 242 B.R. 503 (D.Colo.1999). The second line of cases holds that "[d]ismissal based on lack of good faith must be undertaken on an *ad hoc* basis." *In re Zick*, 931 F.2d 1124, 1129 (6th Cir.1991). The *Zick* court held that dismissal based on lack of good faith pursuant to 11 U.S.C. § 707(a) "should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish life-style, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Id.*

The third line of cases holds that, although certain actions of a debtor constituting cause may also be characterized as bad faith, "framing the issue in such terms [bad faith] 'may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7.'" *In re Bilzerian*, 258 B.R. 850, 856 (Bankr. M.D.Fla.2001) (quoting *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir.1994)); *In re Motaharnia*, 215 B.R. 63 (Bankr.C.D.Cal.1997). The *Motaharnia* court held that bad faith constitutes "cause" only in the egregious situation where the debtor's motives for filing the chapter 7 petition are inconsistent with the established purpose of the Bankruptcy Code.

This Court is persuaded by the first line of cases and holds that there is no implicit GFFR under § 707(a). Although many courts have held that such a GFFR

exists in Chapter 11 and 13 cases, "[w]hat distinguishes Chapter 11 and 13 from Chapter 7 is the language of the Bankruptcy Code itself and the post-filing relationship between the debtor and his creditors." *In re Padilla*, 222 F.3d at 1193. Chapter 11 and 13 specifically delineate a good faith requirement for proposed payment plans. *Id.* (citing 11 U.S.C. 1129(a)(3) and 11 U.S.C. § 1325(a)(3)). Chapter 7 makes no mention of a good faith requirement. Further, the relationship between debtor and creditor in Chapter 11 and 13 is significantly different than their relationship in Chapter 7. *Id.* Chapter 11 and 13 debtors are allowed to continue in possession of their assets and alter their contractual relationships with their creditors. *Id.* Chapter 7, on the other hand, ends the debtor-creditor relationship when the debtor metaphorically "throws in the towel." So long as the debtor is willing to surrender all of its assets, regardless of whether debtor's motive was grounded in good faith, the debtor is entitled to Chapter 7 protection. *Id.* (citing Katie Thein Kimlinger and William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. § 707(a); How Bankruptcy Courts have Invented a Good Faith Filing Requirement for Chapter 7 Debtors*, 13 Bankr.Dev. J. 61, 65 (1996)).

The Court acknowledges that the first line of cases deals exclusively with consumer liquidations. The Court is also aware of conflicting case authority dismissing a case as having been filed in bad faith, wherein the debtor (a chapter 7 corporate debtor) had been involved in a two–party dispute which was partially adjudicated in state court pre-petition. *In re Ripley and Hill, P.A.*, 176 B.R. 596 (Bankr.M.D.Fla.1994).

Essential to that court's holding, however, was a balancing test which weighed the benefit and harm to the debtor and creditor. *Id.* 598–599. The court held that since the debtor could receive no discharge, and would be in the same situation upon emerging from its chapter 7 case, it would receive no benefit from continuing the chapter 7 proceeding. *Id.* Furthermore, the court concluded that the creditor would be harmed by the delay caused by the automatic stay of the state court proceeding. *Id.* The court held that these factors weighed in favor of dismissing the case.[1] Even if this Court were to agree with the holding in *Ripley and Hill, P.A.* that § 707(a) contains a GFFR, and thus, applied the balancing test used in that case, the facts of the instant case weigh in favor of denying Indian Spring's motion to dismiss.

■ *Sub judice*, at the time of the filing of the bankruptcy, the debtor's assets consisted of a bank account containing $39,934.30, an account receivable in the amount of $45,411.18, real property worth approximately $200,000 and potential causes of action against the debtor's shareholders for transfers that occurred in previous years. According to Adam Rabin, the debtor's state court counsel, if the Construction Litigation had proceeded to trial, it would have cost the debtor approximately $150,000 to $200,000, funds which the debtor did not have.

Had the debtor continued with its defense of the lawsuit and used its remaining cash and accounts receivable to pay its attorneys, and also, had the debtor sold its real property to generate additional funds

---

**1.** Also significant to the *Ripley* court was that the debtor had absolutely no assets to distribute and only one creditor. Therefore, there was no issue as to the fair and orderly distribution of assets. In the present case, the debtor does have assets to distribute and, though with substantially lesser claims than Indian Springs, there are other creditors involved.

to fund its defense of the lawsuit, the creditors likely would be complaining that the debtor's officers did not act in the best interests of the debtor, and instead wasted the debtor's resources on legal fees. In this case, after ten years of litigation, four sets of attorneys, three mediations, the death of the in-house counsel who was coordinating the debtor's defense, and when the face value of debtor's assets had dwindled to approximately $300,000, the debtor's principal made the decision to file this chapter 7 proceeding. Applying the balancing test used in *Ripley,* the benefit to creditors weighs in favor of allowing this case to remain pending, to be administered by the chapter 7 trustee.

The Court is aware of two opinions involving the dismissal of a chapter 7 corporate debtor wherein the cases were dismissed "for cause" as set forth in § 707(a). Both cases involve factual circumstances inapposite to the situation at hand. In the case of *In re Commercial Oil Service, Inc.,* 58 B.R. 311 (Bankr.N.D.Ohio 1986) the chapter 7 debtor held, as its sole asset, real property that was severely polluted. *Id.* at 312–313. Pre-petition, the State of Ohio initiated action against the debtor resulting in the issuance of an injunction regarding the enforcement of certain environmental laws. *Id.* The debtor sought bankruptcy protection to avoid the effect of these injunctions. *Id.* The trustee in bankruptcy moved to dismiss the case and was joined by the State of Ohio Environmental Protection Agency. *Id.* The court dismissed the case on the basis that it was deemed important to the public health, safety and well-being of the community to place the environmentally-contaminated property back under the control of the state court, as the trustee in bankruptcy

could not manage the site of the contaminated property or comply with state law. *Id.* at 316. The bankruptcy court further noted that this was not a case where assets could be liquidated, claims adjudicated and a distribution made, but was an on-going environmental nuisance which threatened the health, safety and well-being of the people who surround it.

> The reasons which constitute "cause" under § 707 include the health, safety and welfare of the public, the lack of experience of the court and the Trustee in cleaning up hazardous wastes, the delay and expense of adding a Bankruptcy case to the Federal and State court actions, and finally that any possible distribution to creditors would be inconsequential thus making administration of the case an exercise in futility.

*Id.* at page 318.

Another decision wherein a chapter 7 corporate debtor was dismissed for cause pursuant to 11 U.S.C. § 707(a) is *In re Addon Corporation,* 231 B.R. 385 (Bankr. N.D.Ga.1999). In that case, the debtors claimed a possessory interest in an office building it leased from Trizec Colony Square, Inc. ("Trizec")[2], which it then subleased to two bankruptcy attorneys. *Id.* at 388. The debtor failed to pay the rent to Trizec, and Trizec terminated the lease pre-petition and sought eviction. *Id.* On the day of the eviction, one of the bankruptcy attorneys/sub-lessees filed the debtor's bankruptcy petition seeking to invoke the automatic stay to stop the eviction. *Id.* The debtor's schedules listed no secured creditors and listed Trizec as the only non-insider unsecured creditor. *Id.* The debtor's only scheduled asset was a bank account containing approximately $2,000. *Id.* The court determined that, as

2. Trizec was the successor in interest to Prudential Insurance Company of America, the original landlord in the lease.

the lease had terminated pre-petition, the office building lease was not an asset of the debtor's estate. *Id.* at 390. The court held that the debtor's chapter 7 petition served no bankruptcy purpose, as there was no debtor-creditor relationship to be adjusted, and debtor's sole asset, consisting of the approximately $2,000 held in debtor's bank account, could easily be administered outside of bankruptcy and paid to the debtor's sole creditor. *Id.* Further, since a corporate debtor could not receive a fresh start, all claims belonging to the sole creditor, Trizec, would survive the bankruptcy proceedings. *Id.* Chapter 7 administration of the case would not limit Trizec's claims, but would merely delay it. *Id.* Therefore, the court found that the debtor's filing of a chapter 7 petition was "for an improper purpose and was not reasonable," as it was merely an attempt "to hinder, delay and frustrate Trizec in the exercise of its rights..." *Id.* A key distinguishing factor between *Addon Corporation* and this case is that *sub judice,* this case was not filed in an attempt to hinder, delay or frustrate Indian Spring in the exercise of its rights, but rather, in acknowledgment of the futility of the debtor's financial plight.

Though *In re Commercial Oil Service, Inc.* and *Addon Corporation* do not exhaust the possible factors which would constitute cause under 11 U.S.C. § 707(a), they are indicative of the extraordinary circumstances which must be present to warrant dismissal of a voluntary chapter 7 case. Absent such factors as a severe threat to public health, an abuse of the legal process, or some comparable extraordinary circumstances, a voluntary chapter 7 business case should not be dismissed pursuant to 11 U.S.C. § § 707(a).

Indian Spring also sought to have this Court abstain from adjudicating this matter under 11 U.S.C. § 305(a). This

Court determines that, for the reasons stated above, abstention would be inappropriate. Accordingly it is

**ORDERED** that the Motion to Dismiss Chapter 7 Case, and the Motion to Abstain, filed by Indian Spring Country Club, Inc. are **denied.**