**In re Paul A. BILZERIAN.**

**Paul A. Bilzerian, Appellant,**

v.

**Securities & Exchange Commission; and Deborah R. Meshulam as Receiver, Appellees.**

**No. 8:01–CV–1151–T–30TGW.**

United States District Court, M.D. Florida, Tampa Division.

April 2, 2002.

Philip V. Martino, Piper Rudnick LLP, Tampa, FL, James E. Foster, Akerman, Senterfitt & Eidson, Orlando, FL, for debtor/appellant.

Philip V. Martino, Piper Rudnick LLP, Tampa, FL, for appellee.

## ORDER

MOODY, District Judge.

This cause came before this Court on appeal from the Order of the Bankruptcy Court dated February 9, 2001, (the "Order of Dismissal") which dismissed this Chapter 7 bankruptcy case pursuant to 11 U.S.C. § 707(a). The Court has before it the brief of the Appellant, Paul Bilzerian ("Appellant"), the debtor below, and the joint brief of the Appellees, the Securities & Exchange Commission ("SEC") and Deborah R. Meshulam in her capacity as Receiver ("Receiver"). After reviewing the briefs and the cases cited therein, the Court determines that the underlying case was properly dismissed and affirms the Bankruptcy Court's Order of Dismissal.

### BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over appeals from the appealable orders of the Bankruptcy Court. 28 U.S.C. § 158.

### STANDARD OF REVIEW

▇▇ The Bankruptcy Court's conclusions of law (for example, its interpretation of §§ 707(a) and its application of collateral estoppel) are subject to *de novo* review. *See In re Paramount Citrus, Inc.*, 268 B.R. 620 (M.D.Fla.2001). The Bankruptcy Court's findings of fact supporting its dismissal of the Chapter 7 case for cause are reviewed under a clearly erroneous standard. Fed.R.Bankr.P. 8013.

### FACTUAL BACKGROUND

The factual background of this case is succinctly described in the Bankruptcy Court's Memorandum Opinion on Motion to Dismiss Pursuant to Bankruptcy Code

§ 707(a) which was entered by the Bankruptcy Court on February 16, 2001, and is attached as Exhibit A hereto and made a part of this Order. It is unnecessary to repeat those facts here.

## LEGAL ANALYSIS

The Bankruptcy Court dismissed Appellant's Chapter 7 case pursuant to § 707(a) which provides for dismissal:

only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

 In the case before the Court, the Bankruptcy Court looked to the facts and circumstances preceding the filing of the Chapter 7 case to determine whether the debtor's motive and purposes were consistent with the purpose of Chapter 7, to wit: "to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets for liquidation for the benefit of the debtor's creditors." *In re Huckfeldt,* 39 F.3d 829 (8th Cir.1994). Appellant takes the position[1] that the Bankruptcy Court erred because, he as-

serts, a "for cause" dismissal may be based only on the three reasons enumerated in § 707(a) or, in the alternative, only for post-petition conduct.

While Appellant's brief is well researched and well written, Appellant cites to no authority directly on point supporting his position. There is, however, authority contrary to his position. First, Congress itself has provided that the use of the word "including" is non-exclusive. 11 U.S.C. § 102(3). Second, since there is no Eleventh Circuit authority on these issues, the Court looks to the rulings of other circuits and is persuaded by the reasoning found in *In re Huckfeldt,* 39 F.3d 829 (8th Cir.1994). In *Huckfeldt,* the Eighth Circuit held that the reasons listed in § 707(a) were non-exclusive, meaning they are not the only reasons that can support a "for cause" dismissal. And, it held that pre-petition conduct, particularly conduct aimed at frustrating the judicial process, was an appropriate ground for such dismissal. There, the court found that the debtor's Chapter 7 petition was filed to frustrate a divorce court decree and to force an ex-wife into bankruptcy. That conduct was considered to be unworthy of bankruptcy protection, and a "for cause" dismissal order under § 707(a) was upheld.

Likewise, the reasons given below by the Bankruptcy Court support a "for cause" dismissal. This Court adopts the well reasoned legal analysis and opinions of the Bankruptcy Court found in its Memorandum Opinion on Motion to Dismiss Pursuant to Bankruptcy Code § 707(a) entered on February 16, 2001, and its Memo-

---

1. Appellant seems to take contradictory positions in his brief. On page 298, he acknowledges that the three examples in § 707(a) are not exhaustive but merely illustrative. On page 301, citing *Black's Law Dictionary,* Appellant argues that when a general word, such as "cause" is followed by a specific list of examples, the general word will be interpreted to include *only* those things of the same type as those listed as examples. For purposes of this opinion, the Court has assumed that Appellant's position is that a "for cause" dismissal is limited to the reasons enumerated in § 707(a).

randum Opinion and Order Denying Debtor's Motion to Stay Order of Dismissal, entered on June 28, 2001. These Orders are attached to this Order as Exhibits A and B respectively and made a part hereof.

### EXHIBIT A

No. 01–00076–8W7.

Feb. 16, 2001.

### *Memorandum Opinion on Motion to Dismiss Pursuant to Bankruptcy Code § 707(a)*

This case came on for hearing on February 8, 2001, ("Hearing") upon the motion ("Motion to Dismiss") of the Securities and Exchange Commission ("SEC") and Deborah R. Meshulam, as receiver ("Receiver") (collectively, the SEC and Receiver, the "Movants"), seeking the following relief: dismissal of the case for cause under Bankruptcy Code § 707(a), dismissal of the case under the abstention provisions of Bankruptcy Code § 305, a finding that certain actions are within the "police power" exception of Bankruptcy Code § 362(b)(4), relief from the automatic stay for cause under Bankruptcy Code § 362(d)(1), or alternatively, an order excusing the Receiver from compliance with the turnover provisions of Bankruptcy Code § 543.

The court has considered the entire record including the testimony of the debtor, Paul A. Bilzerian ("Debtor" or "Bilzerian"), the exhibits received in evidence, the declarations of the parties, as well as the numerous memoranda and other filings with the court.

For the reasons set forth below, the court will grant the Motion to Dismiss and dismiss this Chapter 7 case for cause pursuant to Bankruptcy Code § 707(a).

### *Findings of Fact* [1]

Bilzerian commenced this case by the filing of a petition under Chapter 7 on January 2, 2001. At the time of the filing of his Chapter 7 case, Bilzerian was a defendant in an action, *SEC v. Bilzerian,* Civil Action No. 89–1854 SSH ("Enforcement Action"), pending in the United States District Court for the District of Columbia ("D.C. District Court") which currently seeks enforcement of a judgment of disgorgement ("SEC Judgment") obtained by the SEC in an original amount (exclusive of interest) in excess of $60 million.

The Enforcement Action was commenced on June 29, 1989. Soon after, on September 27, 1989, Bilzerian was convicted of securities laws violations and sentenced to four years in prison and fined $1.5 million. The Second Circuit affirmed his criminal conviction on January 3, 1991. *United States v. Bilzerian,* 926 F.2d 1285 (2d Cir.1991).

On April 8, 1991, Judge Harris from the D.C. District Court found Bilzerian liable for securities fraud. *SEC v. Bilzerian,* 1991 WL 83964 (D.D.C.1991). The Court of Appeals affirmed the D.C. District Court's decision. *SEC v. Bilzerian,* 29 F.3d 689 (D.C.Cir.1994).

---

1. The findings of fact which form the basis for the relief requested by Movants were established by judicial notice of pertinent events as set forth in various reported decisions, the collateral estoppel effect of findings made by the D.C. District Court principally in its order reported at *SEC v. Bilzerian,* 112 F.Supp.2d 12 (D.D.C.2000) in which the D.C. District Court found Bilzerian in contempt ("Con-

tempt Order"), prior final determinations in proceedings to which the SEC and Bilzerian were parties that are *res judicata* between the SEC and Bilzerian, admissions of Bilzerian made in his testimony at the Hearing and as contained in filings with this court, and the uncontroverted statements made in the declaration filed by the Receiver in support of the Motion to Dismiss.

On August 6, 1991, Bilzerian filed his first personal bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida ("First Bankruptcy"). The case was assigned to Bankruptcy Judge Alexander L. Paskay. *See In re Bilzerian,* 146 B.R. 871 (Bankr.M.D.Fla. 1992).

On January 28, 1993, the D.C. District Court entered the SEC Judgment against Bilzerian in the amount of $33,140,787.07. *SEC v. Bilzerian,* 814 F.Supp. 116 (D.D.C. 1993). On June 25, 1993, the D.C. District Court entered an order adding an additional $29,196,812.46 in prejudgment interest to the SEC Judgment. *SEC v. Bilzerian,* 1993 WL 542584 (D.D.C.). The Court of Appeals affirmed these decisions. *SEC v. Bilzerian,* 29 F.3d at 696.

The SEC was ultimately successful in the First Bankruptcy in obtaining a determination that the SEC Judgment was nondischargeable under Bankruptcy Code § 523. *In re Bilzerian,* 153 F.3d 1278 (11th Cir.1998). In addition, another creditor, HSSM # 7 L.P. ("HSSM"), which was scheduled by Bilzerian in this case as being owed $30,650,328.17, was similarly successful in obtaining a judgment of nondischargeability in the First Bankruptcy. *In re Bilzerian,* 100 F.3d 886 (11th Cir.1996).

Between 1994 and 1999, Bilzerian transferred his substantial assets into a complex ownership structure of off-shore trusts and family-owned companies and partnerships. It is clear that he did this purposefully to insulate his assets from the reach of his creditors.

For example, in 1994, Bilzerian established "The Paul A. Bilzerian and Terri L. Steffan 1994 Irrevocable Trust" for the benefit of his children ("Children's Trust"). In June of 1994 Bicoastal Holding Company ("Bicoastal"), then jointly owned by Bilzerian and his wife as tenants by the entireties, acquired an option to purchase 6 million shares of Cimetrix Incorporated[2] at 16 cents per share. Bicoastal then paid a dividend of an option to acquire 5.4 million shares of Cimetrix to Bilzerian and his wife.

In June of 1994, Bilzerian and his wife transferred an option for 2.4 million Cimetrix shares to the Children's Trust. In that same month, Bilzerian's wife transferred the home in which they reside to Bilzerian and his wife as tenants by the entirety ("Home"). The Home is over 30,000 square feet and is valued at approximately $3.5 million. Until Bilzerian's recent incarceration, he resided in the Home with this wife.

In 1995, Bilzerian and his wife established a Cook Islands trust entitled "The Paul A. Bilzerian and Terri L. Steffen 1995 Revokable Trust" ("Family Trust"). Bilzerian is one of the trust's settlors and is a trustee and beneficiary of it. In December of 1995, Bilzerian and his wife transferred all of their shares of Bicoastal to the Family Trust.

In December of 1995, Overseas Holding Limited Partnership, a Nevada limited partnership ("OHLP") was established. Bicoastal is OHLP's sole general partner, owning 1 percent of its equity, and the Family Trust is OHLP's sole limited partner, owning 99 percent of its equity.

Bilzerian and his wife transferred a second Florida property, a Minnesota vacation home, and an option to purchase three million share of Cimetrix stock to OHLP in December of 1995. In March of 1997,

---

**2.** Cimetrix Incorporated ("Cimetrix") employed Bilzerian as its president until his incarceration. From 1996 until August of 2000, Bilzerian had his salary from Cimetrix paid to Bicoastal.

Bilzerian and his wife executed a deed of the Home to OHLP. The deed was recorded in January 1999.

In April of 1997, Bicoastal, the Children's Trust, and the Family Trust through OHLP, exercised the Cimetrix options and acquired 6 million shares of Cimetrix's stock worth more than $31 million. Bicoastal holds 180,000 shares. OHLP holds 2.9 million shares. The Children's Trust holds 2.315 million shares. About 600,000 shares were sold for an unknown amount at an unknown time.

On November 20, 1998, in response to the SEC's motion for civil contempt, the D.C. District Court issued a show cause order that required Bilzerian to file a sworn accounting identifying all assets in which he had any direct or indirect beneficial interest ("Show Cause Order"). Immediately after the entry of the Show Cause Order, in late November or early December of 1998, Bilzerian was removed as trustee of the Family Trust and on December 21, 1998, he was removed as co-beneficiary of the Family Trust.[3]

On August 21, 2000, Bilzerian was found to be in contempt by the D.C. District Court which held that Bilzerian has the ability to repay the disgorgement judgments, at least in part. Rather than comply with the disgorgement, "his diligent efforts have been focused on how to avoid compliance with the Court's orders." *SEC v. Bilzerian*, 112 F.Supp.2d at 23–28 and n. 23.

Bilzerian has been the beneficial owner of substantial assets in the years since the judgment was entered, but he has made no attempt whatsoever to pay the SEC Judgment. Instead of complying, he has transferred the assets to entities controlled by his wife and other family members.[4]

The D.C. District Court set a number of conditions that Bilzerian had to meet in order to purge the contempt. One of these was a requirement that he submit an additional accounting of his assets so that the D.C. District Court could ascertain the precise portion of the $62 million judgment Bilzerian was capable of paying.

On December 22, 2000, the D.C. District Court entered an order appointing the Receiver. On December 22, 2000, the Receiver was ordered to marshal assets of Bilzerian and various related entities—the Family Trust, the Children's Trust, Bicoastal, and OHLP ("Bilzerian Related Entities"). Bilzerian and the Bilzerian Related Entities were also ordered to provide access to assets and documents to the Receiver and to take no action to hinder, delay, or obstruct or otherwise interfere with the Receiver.

Immediately after her appointment, the Receiver sent letters to a variety of individuals and entities connected to Bilzerian requesting that they immediately surrender assets, provide the Receiver with access to assets and information, and take no action to interfere with the Receiver.

On January 2, 2001, less than two weeks after appointment of the Receiver, Bilzeri-

---

**3.** The D.C. District Court found the Family Trust to be the "apex of the complex ownership structure into which Bilzerian has transferred his assets." *SEC v. Bilzerian*, 112 F.Supp.2d at 18, 27 n. 30.

**4.** The District Court, in the Contempt Order, further found that it was "inconceivable that Bilzerian does not have the ability to provide the Court with a copy of the Family Trust instrument; he and his wife were the Trust's settlors, until recently he was both its trustee and a beneficiary. Its current trustees and Trust protector are members of the family, and the sole current beneficiary is his wife." *Id.*

an filed this Chapter 7 case. The same day, Bilzerian sent a letter to the SEC and the Receiver notifying them of the bankruptcy filing and that the filing "stays certain collection and other actions against me and my property. Any attempt to collect a debt or take other action in violation of the Bankruptcy Code may subject you and your employers to penalties."

On January 12, 2001, the D.C. District Court found that Bilzerian had not purged his contempt and ordered him incarcerated ("Incarceration Order"). The Incarceration Order also sets forth the findings of the D.C. District Court that the civil contempt proceeding resulting in the Incarceration Order was excepted from the automatic stay as an exercise of the "police powers" under Bankruptcy Code § 362(b)(4) and as necessary "to uphold the dignity of the Court and to vindicate the authority of the Court to enforce its orders." *Incarceration Order* at 5.

On January 15, 2001, Bilzerian wrote counsel for the SEC and the Receiver stating that they had violated the automatic stay and demanding that they support his efforts to cause the D.C. District Court to vacate the Incarceration Order. In his letter, Bilzerian threatened sanctions against counsel, the Receiver, and their employers for their "willful and malicious violations of the Automatic Stay."

On January 17, 2001, Bilzerian filed an appeal from the Incarceration Order as well as the related Order Appointing Receiver and the Contempt Order.

On January 17, 2001, the D.C. District Court granted Bilzerian an 11–day delay of the effectiveness of the Incarceration Order. A request for stay pending appeal was denied by the D.C. District Court on January 26, 2001, and was denied by the D.C. Circuit on January 29, 2001.

On January 30, 2001, Bilzerian was incarcerated.

### Conclusions of Law

On January 25, 2001, this court considered a motion by the SEC for a protective order with respect to a deposition notice that Bilzerian had served on the SEC which noticed a deposition under Fed. R. Civ. Proc. 30(b)(6) of a representative of the SEC for Monday, January 28, 2001. One of the contentions advanced by the SEC in support of its motion was that the factual findings needed for the relief the SEC requests in the Motion to Dismiss are found in various prior decisions of the courts before which Bilzerian has appeared[5] that the SEC contends are binding on this court under the doctrine of collateral estoppel.[6]

At the Hearing, Bilzerian objected to the court's making the findings set out above arguing that collateral estoppel does not apply as to the issues before the court on the Motion to Dismiss. Accordingly, the court will first consider the applicabili-

---

5. Those decisions are:
 1. *United States of America v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991) (affirming Bilzerian's criminal conviction).
 2. *SEC v. Bilzerian*, 29 F.3d 689 (D.C.Cir. 1994) (affirming SEC Judgment).
 3. *SEC v. Bilzerian*, 153 F.3d 1278 (11th Cir.1998) (finding SEC Judgment non-dischargeable).
 4. *SEC v. Bilzerian*, 112 F.Supp.2d 12 (D.D.C.2000) (Contempt Order).

 5. Order Appointing Receiver of December 22, 2000 in the Enforcement Action.
 6. *SEC v. Bilzerian*, 2001 U.S. Dist.Lexis 272 (D.D.C. January 12, 2001) (ordering Bilzerian incarcerated for failing to satisfy purgation requirements).

6. *See In re Bilzerian*, 258 B.R. 846 (Bankr. M.D.Fla.2001) (this court granted the SEC's motion for a protective order).

ty of collateral estoppel to the numerous findings made by the D.C. District Court in the Contempt Order.

A. *Collateral Estoppel Effect of the Contempt Order.*

Collateral Estoppel "requires that (1) the issue be identical in both the prior and current action; (2) the issue was actually litigated; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the burden of persuasion in the subsequent action not be significantly heavier." *Securities and Exchange Commission v. Bilzerian (In re Bilzerian),* 153 F.3d 1278, 1281 (11th Cir.1998).

The court finds that as a matter of law, collateral estoppel does apply to the findings of the D.C. District Court made by Judge Harris in the Contempt Order, for the following reasons.

First, as discussed below, the issue with respect to whether this case should be dismissed depends on whether "cause" exists under Bankruptcy Code § 707(a). "Cause" is not a defined term. Rather, it requires the court to look at all of the facts and circumstances leading up to the filing of the case. The types of factual findings made by Judge Harris are exactly the sort of issues on which this court would have otherwise required evidentiary support. Second, it is clear that the facts upon which Judge Harris based the Contempt Order were actually and vigorously litigated by the SEC and Bilzerian. Third, the determination of the factual issues resolved by Judge Harris was critical and necessary to his findings that Bilzerian was in contempt of his prior orders.

Finally, the burden of persuasion in this action is not significantly heavier than the burden that the SEC had to carry in order to prevail on their motion to have Bilzerian declared in contempt of court. "In a contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order." *Securities and Exchange Commission v. Bankers Alliance Corp.,* 881 F.Supp. 673 (D.D.C.1995). *See also Commodity Futures Trading Commission v. Wellington Precious Metals, Inc.,* 950 F.2d 1525, 1529 (11th Cir.1992). The burden of the SEC in this case is a preponderance of the evidence. This is a lesser burden than that faced by the SEC in the D.C. District Court.

Accordingly, the court will next consider whether these factual findings support a finding of cause under Bankruptcy Code § 707(a).

B. *Dismissal for Cause— § 707(a).*

Movants rely on Bankruptcy Code § 707(a) in support of their argument that this case should be dismissed. That section provides that, "The court may dismiss a case...for cause...." The primary contention of Movants is that this case was filed in "bad faith" and that "evidence that a Chapter 7 case was filed in bad faith constitutes cause for dismissal under Section 707(a)...." In support of this contention, they cite the proposition that "good faith is an implicit jurisdictional prerequisite to filing a Chapter 7 petition." *Citing In re Creazzo,* 172 B.R. 657 (Bankr. M.D.Fla.1994).

While a good faith requirement is explicitly imposed in chapter 11, 12 and 13 cases, *11 U.S.C. §§ 1129(a)(3), 1225(a)(3) and 1325(a)(3),* that explicit reference is omitted in a chapter 7 case. However, even absent this explicit reference, courts have dismissed chapter 7 cases under § 707(a)

for "lack of good faith." The seminal case holding that the lack of good faith is a valid basis for dismissal of a case under section 707(a) is *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir.1991) ("*Zick*").

In accepting this rationale, however, the Sixth Circuit in *Zick* cautioned that dismissal based on bad faith is only appropriate in "those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Id.* at 1129. After review of the lower court's findings, the Sixth Circuit held that these findings supported a finding of a lack of good faith.

Not all courts have agreed with the *Zick* court's holding. For example, the Eighth Circuit in *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829 (8th Cir.1994) ("*Huckfeldt*") declined to frame the inquiry of dismissal under section 707(a) as one of "bad faith" but ruled that "the § 707(a) analysis is better conducted under the statutory standard 'for cause.'"

In reaching its decision, it agreed with the "narrow cautious approach" of *In re Khan*, 172 B.R. 613 (Bankr.D.Minn.1994). The *Huckfeldt* court acknowledged the criticism of the *Zick* approach and legitimate concerns of certain courts. *Id.* at 832 (citations omitted). That is, chapter 7 is a liquidation proceeding and a different standard is appropriate when a debtor is willing to surrender all non-exempt assets. *Id.* While some conduct constituting cause to dismiss may be readily characterized as "bad faith," framing the issue in such terms "may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." *Id.* Under the facts of the *Huckfeldt* case, the court ultimately held that "cause" existed to dismiss a chapter 7 case where the debtor filed the petition to frustrate the divorce court decree, attempted to push his ex-spouse into bankruptcy, and manipulated his earnings to achieve these non-economic motives. *Id.*

Recently, the Ninth Circuit has agreed with the Eighth Circuit that the inquiry under section 707(a) dismissals should be under the statutory standard "for cause." *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir.2000).

Absent Eleventh Circuit precedent on this issue, this court is persuaded that the views expressed in *Huckfeldt* are more consistent with the plain meaning and intent of chapter 7. That is, a court should look at all of the facts and circumstances and determine whether or not "cause" exists for dismissal.

While bad faith is clearly a requirement of chapters 11 and 13,—*In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988) ("*Phoenix*") (dismissal of chapter 11 case on bad faith grounds); *In re Waldron*, 785 F.2d 936 (11th Cir.1986) ("*Waldron*") (dismissal of chapter 13 case for bad faith filing)—it is not a requirement, explicit or otherwise, for the filing of a chapter 7 case. That is, a case of an individual seeking to "reorganize" a debt to a single creditor who files a chapter 11 or chapter 13 on the eve of an adverse ruling in state court or a pending foreclosure sale may well be subject to dismissal for bad faith. *See Phoenix* and *Waldron*.

However, the same debtor who files a chapter 7 should not be denied a discharge by denial of the recourse to bankruptcy without a showing that the debt is nondischargeable under Bankruptcy Code § 523 or that the debtor would not qualify for a discharge under Bankruptcy Code § 727. "Bad faith" taken alone is not a ground for dismissal in a chapter 7 case.

Rather, following the approach of *Huckfeldt*, this court will focus on whether this case should be dismissed for "cause" as that term is used in Section 707(a). This requires an analysis of all of the facts and circumstances leading up to the filing of this case to include the debtor's motive in filing the case, the purposes which will be achieved in this case, and whether the debtor's motive and purposes are consistent with the purpose of chapter 7, that is, to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets for liquidation for the benefit of the debtor's creditors. *Huckfeldt*, 39 F.3d at 831.

This analysis starts with the fact that of the approximately $139,762,828.17 of debt listed in Bilzerian's schedules, $130,650,328.17 is owed on account of the nondischargeable debts owed to the SEC and HSSM. Another $9 million is owed to the Internal Revenue Service which, subject to certain narrow exceptions, would be nondischargeable under Bankruptcy Code § 523(a)(1). It can reasonably be inferred from these facts that Bilzerian did not file this case to get a "fresh start."

It can also be inferred that Bilzerian has no intention of handing any assets over to the trustee for the benefit of his creditors. In his schedules filed in this case, Bilzerian has listed no assets available for creditors. That is, this is a "no asset" case. As stated by his wife in a declaration filed in the Enforcement Action, "To the best of my knowledge, my husband has no means or ability to pay any portion of the Disgorgement Judgment obtained by the SEC in January 1993." *SEC v. Bilzerian*, 112 F.Supp.2d at 23.

Bilzerian's own words also reflect his perspective and motives for filing this case. For example, in a March 1999 show cause hearing in the D.C. District Court, Bilzerian states, "[I]t shouldn't be a shock to anybody that I ... have no reason, I mean, to dedicate my life to trying to earn money all of which would go to basically pay a judgment that I don't believe, with all due respect to the Court, should have been entered in the first place." *SEC v. Bilzerian*, 112 F.Supp.2d at 28. More recently, in a filing with the same court,

> So that there will never be a misunderstanding on this point, I wish to make it crystal clear, for so long as I draw a breath, no matter how long it takes, no matter whether I reside in a prison cell or a rat-infested apartment or the largest mansion in the world, I will never, ever rest until the truth of my case is published for all the world to see.

Bilzerian's Exhibit Number 3.

Bilzerian's resolve to never pay the SEC debt is beyond dispute. The journey into this court by the recent filing of this chapter 7 is yet another step on a path started years ago in a desire to protect his assets and the assets that he shares with his family in order to frustrate his creditors. It is clear that there will not be an end to these efforts until either he is successful, the SEC is successful, or somebody simply gives up—a result this court considers unlikely.

The only real question is in what court these issues will be litigated. This court certainly has jurisdiction to deal with the same assets being pursued by the SEC and Receiver in the D.C. District Court. Certainly, Bilzerian would prefer that this court be the court that determines the outcome of any such litigation. That is why he filed here.

On the other hand, things have not gone well for Bilzerian in the D.C. District Court. He has been held in contempt. He has been incarcerated. Obviously, he desires to change the venue in which the

issues raised by the SEC and Receiver will be decided. The question then is—should the door to this court be open to Bilzerian as the next step in his litigation strategy?[7]

The court believes that based on these circumstances, ample cause exists to dismiss this case. In addition to Bilzerian's motives in filing the case, his inability to discharge virtually any significant debt and the fact that he has filed the case as one of "no assets," persuades this court that "cause" exists. The court has also considered the following additional factors as supporting a finding that cause exists under Section 707(a).

A Federal court receivership is already in place for the purposes of marshaling and liquidating Bilzerian's assets. Functionally, the Receiver will be acting as a Chapter 7 trustee and has been granted broad powers to accomplish her objectives under the control of a federal district court judge—the same judge that has vast familiarity with the background of this case—having presided over the case for approximately ten years.

Significantly, there is no creditor opposition to dismissal of the case so that the receivership can continue to conclusion. All parties that appeared and took a position at the Hearing, other than Bilzerian, supported dismissal of the case.

Clearly, the only reason this case was filed was because of the SEC's collection efforts. While Bilzerian attempted to convince the court that this case was filed because of litigation with another creditor, this argument was simply not credible. This is clear from all of the facts and circumstances. For example, the only creditor that received immediate notice of his filing was the SEC through a letter sent to them on the day he filed.

It is also no coincidence that at the time of this filing, Bilzerian's impending incarceration was looming. The obvious inference was that he hoped the bankruptcy stay would prevent that incarceration, as he argued unsuccessfully to the D.C. District Court.[8]

### Conclusion

For all of the foregoing reasons, ample grounds exist to dismiss this case for cause under Section 707(a).[9]

The court by separate order has dismissed this case.

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

### EXHIBIT B

June 28, 2001.

### *MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO STAY ORDER OF DISMISSAL*

This case came on for consideration on the motion ("Motion to Stay")(Doc.

---

7. Bilzerian is no stranger to the legal system. A Westlaw search indicates that he has been a named party either as plaintiff, defendant or debtor in 140 actions in the state and Federal courts over the last 15 years. In many of these he has appeared *pro se* and based on this court's observation has done a very competent job of representing his own interests.

8. The D.C. District Court correctly rejected this argument since the exercise of that court's contempt powers under the circumstances of this case clearly fell within the "police power" exception to the automatic stay. Bankruptcy Code § 362(b)(4); *SEC v. Bilzerian*, 2001 U.S. Dist. Lexis 272 (D.D.C. January 12, 2001).

9. In addition, while this ruling moots the other relief requested, the court finds that this record would also support a finding in favor of Movants with respect to the other relief requested in the Motion to Dismiss.

No.57) filed by the debtor, Paul A. Bilzerian ("Debtor" or "Bilzerian") seeking to stay this court's order of February 9, 2001, dismissing this Chapter 7 case ("Dismissal Order")(Doc. No.28).[1] In considering the Motion to Stay, the court has considered the entire record, including the response filed by the Securities and Exchange Commission ("SEC") and Deborah R. Meshulam, as receiver ("Receiver")(Doc. No.59) and the Debtor's reply to the SEC's and Receiver's response ("Debtor's Reply")(Doc. No.64).

In determining whether to grant a stay pending appeal, the court must consider four criteria:

> (1) Whether the movant has made a showing of likelihood of success on the merits;
>
> (2) Whether the movant has made a showing of irreparable injury if the stay is not granted;
>
> (3) Whether the granting of the stay would substantially harm the other parties; and
>
> (4) Whether the granting of the stay would serve the public interest.

*In re Dale Mabry Properties, Ltd.,* 149 B.R. 209 (M.D.Fla.1992)(Merryday, J.).

The moving party must show satisfactory evidence on all four criteria. *In re Lykes Bros. Steamship Co., Inc.,* 221 B.R. 881, 884 (Bankr.M.D.Fla.1997). The failure to satisfy one prong of the standard for granting a stay pending appeal "dooms his motion." *Id. (quoting from Green Point v. Treston,* 188 B.R. 9, 12 (S.D.N.Y. 1995)).

For the reasons set forth below, the Motion for Stay will be denied.

### A. *Likelihood of Success on the Merits.*

Bilzerian has pointed to "four substantial issues on appeal." These issues are: (1) Whether the court's decision improperly limits access to the bankruptcy courts; (2) whether the court erred when it applied collateral estoppel to a civil contempt order; (3) whether the court erred when it found that this case was filed solely as a result of the order appointing receiver; and (4) whether the court erred when it determined that the Debtor's desire to stay the collection effort of a creditor was "cause" for dismissal under section 707(a).

*(1) Whether the Court's Decision Improperly Limits Access to the Bankruptcy Courts.*

The basis for the Debtor's arguments with respect to this issue is that this court's decision improperly limits access to the bankruptcy courts by utilizing the provisions of section 707(a) to dismiss this case "for cause."

The Debtor argues that section 707(a) should only be applied when there are instances of post-petition conduct similar to those specifically enumerated in that section. That is, non-payment of fees, unreasonable delay by the debtor which prejudices the creditors, or failure to provide information required by the Bankruptcy Code. *11 U.S.C. § 707(a).* Essentially, the Debtor urges this court to apply the canon of construction, "*expressio unius est exclusio alterius*[2]" and only apply section 707(a) when there is misconduct of the

---

**1.** The findings of fact and conclusions of law which constitute the grounds for the Dismissal Order are set forth in the court's memorandum opinion ("Memorandum Opinion") of February 16, 2001 (Doc. No. 29). *In re Bilzerian,* 258 B.R. 850 (Bankr.M.D.Fla.2001).

**2.** "The expression of one thing is the exclusion of another." *Black's Law Dictionary* 1635 (7th ed.1999).

Debtor that occurs **after** the filing of the bankruptcy.

This court indeed applied a more expansive interpretation to section 707(a) than that urged by the Debtor. The reason for this court's interpretation of section 707(a) is twofold. First, as specifically provided for in section 102(3) of the Bankruptcy Code, a basic rule of construction in bankruptcy is that the word "including" as used in section 707(a) is not meant to be a limiting word.

Secondly, the Debtor cites no precedent interpreting section 707(a) consistent with his interpretation. Rather, the Debtor argues that none of the factors relied upon by this court in dismissing his case would have justified dismissal of this case under Chapter VII of the Bankruptcy Act of 1898 citing as authority the 14th edition of Collier on Bankruptcy which interpreted bankruptcy law under the statute in effect prior to the enactment of the Bankruptcy Code.[3] In fact, no circuit court has reached a similar conclusion as that advanced by the Debtor in his interpretation of section 707(a). Rather, the circuit court decisions dealing with this issue have uniformly rejected the Debtor's narrow construction. *See, e.g., Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir.1991); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829 (8th Cir.1994); *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir.2000).

Additionally, in light of the interpretation given to section 707(a) by the Sixth, Eighth, and Ninth Circuits, the court is persuaded that the Debtor's very restrictive view would not be adopted by the Eleventh Circuit if it dealt with this issue. Indeed, there is Eleventh Circuit prece-

dent that applies the "bad faith" standard to the dismissals of chapter 11 and 13 cases under similar statutory schemes. *See, e.g., In re Phoenix Piccadilly*, 849 F.2d 1393 (11th Cir.1988)(bad faith dismissal of chapter 11 case) and *In re Waldron*, 785 F.2d 936 (11th Cir.1986)(bad faith dismissal of chapter 13 case).

*(2) Whether the Court Erred When It Applied Collateral Estoppel to a Civil Contempt Order.*

The next issue raised by the Debtor is that collateral estoppel was incorrectly applied by this court. Indeed, a number of the findings set forth in the Memorandum Opinion were made based on the collateral estoppel effect of findings made by District Judge Stanley Harris of the United States District Court for the District of Columbia ("D.C. District Court") in his order[4] finding Bilzerian in contempt ("Contempt Order").

In this regard, one of the essential elements that has to be satisfied in order for collateral estoppel to be applicable to prior findings by another court is that the burden of persuasion in the subsequent action cannot be significantly heavier than the prior action. *Securities and Exchange Commission v. Bilzerian*, 153 F.3d 1278, 1281 (11th Cir.1998).

The Debtor asserts that the use of collateral estoppel in these circumstances is improper because of his perception that there is a difference in the burdens of persuasion involved in the two proceedings. The Debtor's argument on this point is unpersuasive for two reasons. First, the findings that are contained in this court's Memorandum Opinion that are based on the collateral estoppel effect of the findings of Judge Harris in the Contempt Order were not critical and neces-

---

**3.** Effective to bankruptcy cases filed after October 1, 1979.

**4.** *SEC v. Bilzerian*, 112 F.Supp.2d 12 (D.D.C. 2000).

sary to this court's conclusion that "cause" exists to dismiss this case. The findings critical to this court's conclusions, none of which are based on collateral estoppel, are the following [5]:

1. Of the approximately $139,762,828.17 of debt listed in Bilzerian's schedules, $130,650,328.17 is owed on account of the nondischargeable debts owed to the SEC and one other creditor. Another $9 million is owed to the Internal Revenue Service which, subject to certain narrow exceptions, would be nondischargeable under section 523(a)(1).[6]

2. In the schedules initially filed in this case, Bilzerian listed no assets available for creditors. That is, this is a "no asset" case.

3. Bilzerian's own words also reflect his perspective and motives for filing this case:

(a) "[I]t shouldn't be a shock to anybody that I . . . have no reason, I mean, to dedicate my life to trying to earn money all of which would go to basically pay a judgment that I don't believe, with all due respect to the Court, should have been entered in the first place."

(b) "So that there will never be a misunderstanding on this point, I wish to make it crystal clear, for so long as I draw a breath, no matter how long it takes, no matter whether I reside in a prison cell or a rat-infested apartment or the largest mansion in the world, I will never, ever rest until the truth of my case is published for all the world to see."

4. The only real question is in what court these issues will be litigated. This court certainly has jurisdiction to deal with the same assets being pursued by the SEC and Receiver in the D.C. District Court. Certainly, Bilzerian would prefer that this court be the court that determines the outcome of any such litigation. That is why he filed here.

5. On the other hand, things have not gone well for Bilzerian in the D.C. District Court. He has been held in contempt. He has been incarcerated. Obviously, he desires to change the venue in which the issues raised by the SEC and Receiver will be decided. The question then is—should the door to this court be open to Bilzerian as the next step in his litigation strategy?

6. A federal court receivership is already in place for the purposes of marshaling and liquidating Bilzerian's assets. Functionally, the Receiver will be acting as a Chapter 7 trustee and has been granted broad powers to accomplish her objectives under the control of a federal district court judge—the same judge that has vast familiarity with the background of this case—having presided over the case for approximately ten years.

7. Significantly, there is no creditor opposition to dismissal of the case so that the receivership can continue to conclusion. All parties that appeared and took a position at the hearing, other than Bilzerian, supported dismissal of the case.

8. Clearly, the only reason this case was filed was because of the SEC's collection efforts. While Bilzerian attempted to convince the court that this case

---

5. Memorandum Opinion, at 294–95.

6. The inference drawn by this court in the Memorandum Opinion from these facts is that

Bilzerian did not file his chapter 7 bankruptcy case to get a "fresh start."

was filed because of litigation with a creditor other than the SEC, this argument was simply not credible. This is clear from all of the facts and circumstances. For example, the only creditor that received immediate notice of his filing was the SEC through a letter sent to them on the day the case was filed. 9. It is also no coincidence that at the time of this filing, Bilzerian's impending incarceration was looming. The obvious inference was that he hoped the bankruptcy stay would prevent that incarceration, as he argued unsuccessfully to the D.C. District Court.

While this court did apply collateral estoppel in making a number of other findings referred to in the findings of fact set out in the Memorandum Decision, the facts considered critical and necessary to reaching the conclusions as to "cause" as set forth above were not based on collateral estoppel. Rather, all of these facts were established by other means, such as judicial notice, admissions by a party, res judicata or the testimony of Bilzerian.

Furthermore, even as to the other findings included in this court's findings of fact, the Debtor's arguments are unpersuasive. That is, it was entirely appropriate to make those findings based on the Contempt Order by applying the doctrine of collateral estoppel.

The main thrust of the Debtor's argument is that in the civil contempt proceeding that led to the Contempt Order, *he* (and not the SEC) had the burden of persuasion and this burden was significantly higher than the "preponderance of evidence" required of the SEC under section 707(a). He cites as support the Contempt Order that states "[o]nce the SEC has made a prima facie showing that Bilzerian did not comply with the Court's orders, the burden shifts to Bilzerian to *produce* evidence justifying his noncompliance." 112 F.Supp.2d at 16 (emphasis added and internal citations omitted). The Debtor goes on to cite that his burden, according to the D.C. District Court, was to "substantiate his inability to comply with the Court's orders 'categorically and in detail.' " *Id.*

However, the Debtor has a fundamental misunderstanding about his burden in the contempt proceeding. The Contempt Order specifically noted that the Debtor "bears *the burden of production* (emphasis added)" on his defense against a finding of contempt on the grounds that he is unable to comply with the orders. *Id.*[7] The court's reference in the Contempt Order that the Debtor "substantiate his inability to comply .... 'categorically and in detail' " refers to his *burden of production*. This is entirely consistent with the law on civil contempt.

A civil contempt proceeding can be viewed as a three-step process that shifts the burden of production but always leaves the burden of persuasion with the moving party. *Battaglia v. U.S.*, 653 F.2d 419, 422 (9th Cir.1981) (*"Battaglia "*). The party seeking a finding of civil contempt bears the *burden of proof* by a clear and convincing standard. *Chairs v. Burgess,* 143 F.3d 1432, 1436 (11th Cir.1998) (*"Chairs "*); *Battaglia,* 653 F.2d at 422. Once this prima facie showing of a violation is made, then the *burden of production* shifts to the defendant "to produce evidence explaining

---

**7.** The " 'burden of proof' signifies the duty or obligation of establishing, in the mind of the trier of facts, conviction on the ultimate issue. It is the duty of the person alleging the case to prove it, rather than the duty of one party or the other to introduce the initial quantum of evidence on an issue; the latter burden is an alternative concept referred to as the burden of production or the burden of going forward with the evidence." *Moore's Federal Practice* § 132.02[4][a] (3d Ed.2000).

his noncompliance." *Chairs,* 143 F.3d at 1436; *Battaglia,* 653 F.2d at 422. The defendant may not merely assert an inability to comply, he must substantiate the inability "categorically and in detail" and show that he has "made in good faith all reasonable efforts to comply." *Contempt Order,* 112 F.Supp.2d at 16–17(internal citations omitted). Then if the burden of production is met, the movant must carry its burden of proof to refute this inability. *Battaglia,* 653 at 423.

The burden of *production* is high because if the burden of production were satisfied by mere assertions, very few, if any, persons would be held in civil contempt—rendering meaningless the court's ability to enforce its orders. The Debtor fails to recognize that while the burden of *production* may shift, the burden of *persuasion* or burden of *proof* is always on the moving party seeking a finding of civil contempt. That burden of proof or persuasion never shifts. *Commodity Futures Trading Commission v. Wellington Precious Metals, Inc.,* 950 F.2d 1525, 1529 (11th Cir.1992); *Battaglia,* 653 F.2d at 422 ("courts have held that in a contempt proceeding, where the defendant introduces evidence of inability to comply, the government has the burden of proving ability to comply")(internal citations omitted).

Accordingly, this court does not find merit in the Debtor's argument that collateral estoppel was incorrectly applied because he had a different or higher burden in the Contempt Proceedings even if the findings that were based on collateral estoppel had been critical and necessary to this court's finding that "cause" existed to dismiss this case.

*(3) Whether the Court Erred When It Found That This Case Was Filed Solely as a Result of the Order Appointing Receiver.*

Indeed, this court found that it was clear that the only reason this case was filed was because of the SEC's collection efforts. Memorandum Opinion, at 295. The Debtor's motive or purpose in filing the case was a part of this court's analysis of the facts and circumstances leading up to the filing of this case. Whether the debtor's motive or purpose were consistent with the purpose of chapter 7, that is, to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets for liquidation for the benefit of the debtor's creditors, played an important role in this court's determinations.

In this regard, this court found most persuasive the fact that the only creditor that received immediate notice of the Debtor's filing was the SEC through a letter sent to them on the day the case was filed. It is also no coincidence that at the time of this filing, Bilzerian's impending incarceration was looming. The obvious inference was that he hoped the bankruptcy stay would prevent that incarceration, as he argued unsuccessfully to the D.C. District Court.[8]

In fact, it can also be concluded that the filing of the instant Motion to Stay was motivated by the SEC's collection efforts. As stated in the Debtor's Reply, "The fundamental reason and benefit for filing a bankruptcy petition is for the breathing room that the automatic stay provides."[9]

---

**8.** The D.C. District Court correctly rejected this argument since the exercise of that court's contempt powers under the circumstances of this case clearly fell within the "police power" exception to the automatic stay. 11 U.S.C. § 362(b)(4); *SEC v. Bilzerian,* 131 F.Supp.2d 10 (D.D.C.2001).

**9.** Debtor's Reply at 6.

Clearly, the ongoing collection efforts by the SEC continue to be the reason the Debtor seeks the protection afforded by the automatic stay if this case were not dismissed and the Debtor were successful in resisting the SEC's motion for relief.[10]

*(4) Whether the Court Erred When It Determined That the Debtor's Desire to Stay the Collection Effort of a Creditor Was "Cause" for Dismissal Under Section 707(a).*

While this court did consider as a factor in dismissing this case that it was filed because of the SEC's collection efforts, this was part of the overall analysis of "all of the facts and circumstances leading up to the filing of this case...."[11] Clearly, this was not the sole basis for this court's conclusions—just one among numerous factors considered.

Based on the foregoing, it is the conclusion of this court that Bilzerian has not satisfied his burden of demonstrating that there is a substantial likelihood that he will succeed on the merits of his appeal.

### B. *Irreparable Harm to be Suffered by the Debtor Absent a Stay.*

This is not a situation where a debtor is seeking to reorganize under chapter 11 in this court as an alternative to having his assets liquidated in a nonbankruptcy court receivership. This is simply a question as to which court oversees the liquidation of the Debtor's assets and the right to pursue certain assets in the hands of third parties

in satisfaction of the Debtor's debts. As noted in the Memorandum Decision, "The only real question is in what court these issues will be litigated."[12] Indeed, if the Debtor has suffered harm it is not because of forum in which his rights will ultimately be adjudicated, but rather the fact that the debt owed to the SEC in excess of $60 million has been declared to be nondischargeable.[13]

### C. *Harm Resulting from the Imposition of a Stay.*

As referenced in the SEC's response to the Motion for Stay, the collection efforts with respect to potentially recoverable assets to satisfy the Debtor's creditors has been proceeding in earnest. The Debtor has not demonstrated that stopping these ongoing collection efforts will not result in harm to the SEC by the attendant delays and disruption that will be caused by the imposition of the automatic stay and the replacement of the Receiver with a Chapter 7 trustee unfamiliar with the substantial work already conducted in the ongoing receivership.

Contrary to the Debtor's assertions, it appears that the stay of this court's order dismissing the Debtor's chapter 7 will impede the ongoing collection efforts with resulting harm to the SEC.

### D. *Considerations of the Public Interest.*

As the SEC points out, the Debtor is a convicted felon with approximately

---

**10.** In this regard, it is important to note that this court also noted in the Memorandum Opinion, "While this ruling moots the other relief requested, the court finds that this record would also support a finding in favor of Movants with respect to the other relief requested in the Motion to Dismiss," which included a request for relief from the automatic stay.

**11.** Memorandum Opinion, at 293–94.

**12.** Memorandum Opinion, at 294–95.

**13.** *In re Bilzerian,* 153 F.3d 1278 (11th Cir. 1998).

$139,000,000 in non-dischargeable debts who has already spent eight years as a debtor in a prior chapter 7 case, who has been found in contempt of court, and who is presently incarcerated because the D.C. District Court has found that he has not purged that contempt. He is being pursued in the District Court Action by the SEC which is charged with enforcing the federal securities laws and the Receiver who has been appointed by the D.C. District Court to assemble all assets in which the Debtor may have an interest for the satisfaction of his creditors.

The court is not persuaded that under these circumstances it would be in the public interest to stop the efforts of the SEC and the Receiver from pursuing these assets in the D.C. District Court— the forum in which the Debtor has been litigating for the past ten years.

### Conclusion

For the foregoing reasons, the court finds that the Debtor has failed to make the showing required for the entry of an order staying the Dismissal Order. Accordingly, it is

ORDERED that the Motion to Stay is denied.