**In re: Jacques N. FARKAS, Debtor.**

No. 04–34601–BKC–SHF.

United States Bankruptcy Court,
S.D. Florida.

March 9, 2006.

Lara Armstrong, Esq, Roswell, GA, for Wells Fargo Bank NA, Creditor.

Barry S Balmuth, Esq, West Palm Beach, FL, for Matilda Sanguonchitte, Sam Sanguonchitte, Creditors.

Marc P Barmat, Esq, Boca Raton, FL, Charles I Cohen, Esq, Boca Raton, FL, for Jacques N. Farkas, Debtor.

Craig I Kelley, Esq, West Palm Beach, FL, for Wachovia Bank NA, Creditor.

Alexander J Perkins, Esq, Coral Gables, FL, for Thelma McAloon, Creditor.

Gregory L Scott, Esq, West Palm Beach, FL, for Flagler Bank, Creditor.

John L Walsh, Esq, Ft. Lauderdale, FL, for Patricia A Dzikowski, Trustee.

### ORDER DENYING MOTION TO DISMISS CHAPTER 7 CASE

STEVEN H. FRIEDMAN, Judge.

**THIS CAUSE** came before the Court on June 13, 2005 upon the Amended Motion to Dismiss Bankruptcy Proceeding, filed

by creditors Sam and Matilda Sanguonchitte (C.P.38), and upon the Joinder to Sanguonchittes' Motion to Dismiss (C.P.48) filed by Thelma McAloon. The Court, having considered the arguments of counsel and being otherwise fully advised in the premises, **denies** the Motion to Dismiss Bankruptcy Proceeding.

### Factual Background

Jacques Farkas ("Dr.Farkas") commenced a voluntary chapter 11 bankruptcy on October 7, 2004. On March 15, 2005, Dr. Farkas converted his case from a chapter 11 proceeding to a chapter 7 proceeding. Dr. Farkas is a medical doctor who is licensed to practice medicine in the State of Florida and specializes in the field of neurosurgery. On August 6, 1999, Sam Sanguonchitte underwent surgery performed by Dr. Farkas. Mr. Sanguonchitte is alleging that Dr. Farkas performed the surgery negligently and, as a result, Mr. Sanguonchitte suffered a devastating injury. Specifically, Mr. Sanguonchitte alleges that rods and wires were improperly inserted into his cervical spine which later migrated into his brain, causing his cervical spine to become unstable. Matilda Sanguonchitte, the wife of Mr. Sanguonchitte, alleges that she also was afflicted as a result of Dr. Farkas' negligence due to her loss of her husband's comfort and consortium. The Sanguonchittes initiated a civil suit against Dr. Farkas, and a jury trial had been scheduled to commence on March 7, 2005.

Thelma McAloon holds a second medical malpractice claim against Dr. Farkas. Ms. McAloon claims to have suffered injury to her lower back caused by a drill that slipped out of Dr. Farkas' hand during surgery. Both the Sanguonchittes and Ms. McAloon had initiated civil actions against Dr. Farkas prior to the petition date. The Sanguonchites have filed a proof of claim in the amount of $9 million and Thelma McAloon has filed a proof of claim in the amount of $800,000.

Based upon circumstances surrounding the medical malpractice actions, the Sanguonchittes and Ms. McAloon seek dismissal of Dr. Farkas' bankruptcy premised upon the following grounds: (1) Dr. Farkas' bankruptcy interferes with the State of Florida's regulation of the practice of medicine pursuant to Fla. Stat. § 458.320 and Art. 10, § 26 Fla. Const.; and/or (2) Dr. Farkas' bankruptcy was filed in bad faith under 11 U.S.C. § 707(a).

The Sanguonchittes contend that Dr. Farkas filed his bankruptcy in an effort to interfere with the State of Florida's obligation to protect the public's health. The Sanguonchittes cite to Fla. Stat. 458.320(1) ("Florida Medical Financial Responsibility Law") which provides:

> As a condition of licensing and maintaining an active license, and prior to the issuance or renewal of an active license or reactivation of an inactive license for the practice of medicine, an applicant must by one of the following methods demonstrate to the satisfaction of the board and the department financial responsibility to pay claims and costs ancillary thereto arising out of the rendering of, or failure to render, medical care or services ....

For physicians with privileges at hospitals the required method for demonstrating financial responsibility mandates that the physician establish an escrow account, maintain a policy of professional liability insurance, or provide an irrevocable letter of credit in the amount of $250,000. However, Fla. Stat. § 458.320(5)(g) provides that a physician with hospital privileges need not obtain the escrow account, insurance policy, or letter of credit, if the physician agrees to pay a medical malpractice judgment up to the amount of $250,000.

The Sanguonchittes allege that Dr. Farkas' chosen method of compliance, in accordance with Fla. Stat. § 458.320(5)(g), was his agreement to make payment on any medical malpractice judgment up to $250,000. To date, neither the Sanguonchittes nor Thelma McAloon have received any payments upon their respective medical malpractice claims.

The Sanguonchittes argue that the sole purpose of Dr. Farkas' bankruptcy is to discharge their medical malpractice claims before they become judgments. In November 2004, an amendment to the Florida Constitution was adopted, providing for the revocation of a physician's license after three incidents of medical malpractice are determined to have been committed. Art. 10, § 26 Fla. Const. (2004) (Florida's "Three Strikes" Amendment). For an incident of medical malpractice to be deemed to have been committed, it must culminate in a final judgment in a court of law, final administrative agency decision, or decision of binding arbitration. *Id.* As such, the Sanguonchittes believe that cause exists to dismiss this bankruptcy as it interferes with the State of Florida's duty to protect the public health by way of circumventing Florida's "Three Strikes" Amendment.

Dr. Farkas counters the argument by asserting that the contentions as to the alleged violations of both the Florida Medical Financial Responsibility Law and Florida's "Three Strikes" Amendment should be directed to the Florida Board of Medicine and not to the Bankruptcy Court. Dr. Farkas further contends that the Florida legislature has specifically authorized the Florida Board of Medicine to adopt rules and to implement the provisions contained in the Florida Constitution and Florida Statutes regarding the practice of medicine and medical malpractice. Therefore, Dr. Farkas believes that any alleged violation relating to his practice as a physician should be directed to the Florida Board of Medicine and should not impact his ability to avail himself of the protection afforded under the Bankruptcy Code.

The Court is persuaded by the argument advanced by Dr. Farkas that a physician against whom a medical malpractice claim is pending has the same right to file a bankruptcy proceeding as any other individual. *See Camp v. St. Paul Fire and Marine Ins. Co. (In re Kimbell),* 958 F.2d 340 (11th Cir.1992). In *Camp,* a creditor holding a medical malpractice claim sought to have the automatic stay lifted to liquidate her claim in state court. The bankruptcy court granted stay relief, but ruled that any judgment obtained would not be enforceable against the doctor personally. *Id.* at 342. Were this Court to agree with the Sanguonchittes' position, a physician faced with pending medical malpractice claims could never file for bankruptcy protection. There does not appear to be any case authority to support the position that a Florida physician with pending malpractice claims is precluded from filing a bankruptcy proceeding. While the Court is sympathetic to the Sanguonchittes' desire to have the merits of their case adjudicated without this bankruptcy case "derailing" their efforts, this Court finds that neither Dr. Farkas, nor the provisions contained in Title 11, interfere with the State of Florida's protection of public health.

The second ground for dismissal raised by the Sanguonchittes is that this case was filed in bad faith pursuant to 11.U.S.C. § 707(a). This Court previously has addressed the issue of whether a Chapter 7 bankruptcy case can be dismissed for cause where there is a showing of bad faith or lack of good faith. *In re RIS Inv. Group, Inc.,* 298 B.R. 848 (Bankr. S.D.Fla.2003). In that case, Indian Spring County Club, Inc., a creditor, moved to

dismiss the chapter 7 petition of the debtor pursuant to 11 U.S.C. § 707(a), which provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including-
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees and charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

The Court analyzed 11 U.S.C. § 707(a) and held that there is no implicit good faith filing requirement for chapter 7 petitions. *Id.* The Court analyzed the three lines of cases relating to dismissal of chapter 7 petitions for bad faith:

(a) The first line of cases holds that there is no good faith requirement to file a chapter 7 bankruptcy. *In re Padilla,* 222 F.3d 1184 (9th Cir.2000); *In re Etcheverry,* 242 B.R. 503 (D.Colo.1999).

(b) The second line of cases holds that dismissal based on lack of good faith must be undertaken on an *ad hoc* basis. *In re Zick,* 931 F.2d 1124, 1129 (6th Cir.1991). The *Zick* court explained that dismissal based on lack of good faith under 11 U.S.C. § 707 "...should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and [an] intention to avoid a large single debt based on conduct akin to fraud, misconduct or gross negligence." *Id.*

(c) The third line of cases proffers that, even though certain actions of a debtor may constitute "cause" under 11 U.S.C. § 707(a), such actions also may be characterized as indicia of bad faith. These cases provide that framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7. *In re Bilzerian,* 258 B.R. 850, 856 (Bankr.M.D.Fla.2001); *In re Motaharnia,* 215 B.R. 63 (Bankr. C.D.Cal.1997). In *Motaharnia,* the court held that bad faith might constitute cause only in the egregious situation wherein a debtor's motives for filing the chapter 7 petition are inconsistent with the established purpose of the Bankruptcy Code.

■ After reviewing the three lines of cases, this Court concluded that if a debtor, by way of the filing of a chapter 7 proceeding, was willing to surrender his or her non-exempt assets, regardless of the motive for the filing, the debtor nonetheless would be entitled to Chapter 7 protection. *In re RIS Inv. Group, Inc.,* 298 B.R. 848, 852 (Bankr.S.D.Fla.2003), citing *In re Padilla,* at 1193. The Court is aware that there are numerous cases that have since been published on this issue in almost every Circuit. It appears that the Circuits continue to be split on the issue of bad faith and whether it constitutes cause to dismiss a chapter 7 bankruptcy. *Compare U.S. v. Pedigo,* 329 B.R. 47 (S.D.Ind.2005) (holding that the list contained in 11.U.S.C. § 707(a) is not exhaustive such that bad faith may constitute "cause" for dismissal in a chapter 7 bankruptcy) and *In re Linehan,* 326 B.R. 474 (Bankr.Mass.2005) (finding that a debtor's bad faith generally does not constitute "cause" for dismissal of a chapter 7 case). This Court continues to find the reasoning set forth in *RIS Inv. Group, Inc.* to be sound:

> [w]hat distinguishes Chapter 11 and Chapter 13 from Chapter 7 is the language of the Bankruptcy Code itself and the post-filing relationship between the

debtor and his creditors. *In re Padilla,* 222 F.3d at 1193. Chapter 11 and 13 specifically delineate a good faith requirement for proposed payment plans. *Id.* (citing 11 U.S.C 1129(a)(3) and 11 U.S.C. § 1325(a)(3)) Chapter 7 makes no mention of a good faith requirement. Further, the relationship between the debtor and creditor in Chapter 11 and Chapter 13 is significantly different than their relationship in Chapter 7. Chapter 11 and 13 debtors are allowed to continue possession of their assets and alter their contractual relationships with their creditors. Chapter 7, on the other hand, ends the creditor-debtor relationship when the debtor metaphorically "throws in the towel." So long as the debtor is willing to surrender all of its assets, regardless of whether debtor's motive was grounded in good faith, the debtor is entitled to Chapter 7 protection. *Id.* (*citing* Katie Thein Kimlinger and William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. § 707(a); How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors,* 13 Bankr.Dev. J. 61, 65 (1996)) *RIS Inv. Group, Inc.,* at 852.

The "for cause" grounds for dismissal under sub-sections (1), (2), or (3) of § 707(a) are not present in this case. Based upon this Court's decision in *RIS Inv. Group, Inc.,* and absent controlling or persuasive authority to the contrary, specifically holding that there is an implicit good faith filing requirement in order to initiate and maintain a chapter 7 proceeding, Sam Sanguonchitte and Matilda Sanguonchitte's Amended Motion to Dismiss Bankruptcy Proceeding, and creditor, Thelma McAloon's Joinder in Sanguonchitte's Motion to Dismiss, are **DENIED.**